

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2007 APR 17 PM 1: 35

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

ABLE SECURITY AND PATROL, LLC,    *       CIVIL ACTION NO.
AND HENRY JOLLY

                                            *

VS                                     SECTION **07 - 1931**

STATE OF LOUISIANA, LOUISIANA    *       MAGISTRATE
STATE BOARD OF PRIVATE SECURITY
EXAMINERS, WAYNE R. ROGILLIO,    *
CORPORATE SECURITY SOLUTIONS, INC.,
CHRISTOPHER WILLIAM FRAIN, MARSH USE INC.
INSURANCE COMPANY, ABLE SECURITY    *
 & INVESTIGATIONS OF LOUISIANA,    *
LLC, WALTER D. ROBERTS, EL DORADO
INSURANCE AGENCY, INC., BLACKWATER
SECURITY CONSULTANTS, LLC,      *
ERIK DEAN PRINCE, COMMERCIAL INSURANCE
GROUP, INC., JANE RYLAND

                                            *
_____

## COMPLAINT FOR VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT [RICO],  42 U.S.C. 1983 AND 1985, THE 14TH AMENDMENT TO THE U.S. CONSTITUTION, THE LOUISIANA CONSTITUTION AND LOUISIANA STATE LAW

Claimants complain of the defendants as follows:

### JURISDICTION

1.  This Court has jurisdiction over Petitioners' various claims under the

following statutes:

2.  Plaintiff brings this action against Defendants for their violations of the

1

**Racketeer Influenced and Corrupt Organizations Act**, 18 U.S.C. §1961, *et seq* and for other causes of action as set forth herein.

a.    This Honorable Court has jurisdiction over this civil action pursuant to 18 U.S.C. §§1962(a), (b), © and (d), 1964©, and 28 U.S.C. §§1331 and 1337.  This is a civil action arising under 18 U.S.C. §§1961-1968, §901(a) of Title IX of the Organized Crime Control Act of 1970, as amended, otherwise known as the Racketeer Influenced and Corrupt Organizations Act ("RICO"), and in particular, under 18 U.S.C. §1964 and other causes of action as set forth hereafter.

## VENUE OF RICO CLAIM

3.    Venue of RICO claim lies within this district:

a.    Venue lies with this district pursuant to 18 U.S.C. §1965 and 28 U.S.C. §1391.  Defendants at relevant times conducted substantial business in this district.   The violations occurred in this district. Defendants transact or have transacted their affairs in this district, and their conduct, upon which this action is founded, was directed at and intended to injure Plaintiff(s) in this district.

b.    Defendants, either on their own or through their agents, at the time of the commission of the acts alleged hereunder, were found in, and/or transacted business in the State of Louisiana, and the cause of action which is the object of this Complaint arises out of business transactions in

2

the State of Louisiana, including specific acts within this district.

c.      Defendants, either on their own or through their agents, conspired to

commit within the State of Louisiana the wrongful acts alleged in this

Complaint and/or committed or participated in the commission of those acts

within or without the State of Louisiana, purposefully directing their

wrongful acts toward the forum of Louisiana, causing in Louisiana, directly

or indirectly, the violations of RICO and the other causes of action set forth

herein and Plaintiffs' resultant injuries.

d.      Defendants' racketeering activities were conducted through a pattern

of acts and transactions which occurred and/or had their effect within the

State of Louisiana, in this district.

e.      In connection with the acts and conduct described herein, the

Defendants directly or indirectly used the means of interstate commerce,

including the mails and telephones.

## NON-RICO CAUSES OF ACTION

4.      This Court has jurisdiction over the following Non-RICO claims:

a.      The **14th Amendment of the United States Constitution** for violations

of petitioners' rights of equal protection against arbitrary, capricious and

discriminatory state action and violations of due process based on race;

b.      **42 U.S.C. 1983** for discrimination based on race and violations of equal

protection based on race and through the exercise of state authority

and action and violations of due process based on race;

c.   **42 U.S.C. 1985** for conspiracy to discriminate based on race and to

violate petitioners' rights of equal protection based on race and through

the exercise of state authority and action and conspiracy to violate

petitioners' rights of due process;

d.   Under State Law - **General tort law and La. Civil Code 2315**, et seq -

intentional infliction of emotional distress;

e.   Under the Louisiana State Constitution and Louisiana **General Tort**

**Law** for violations of equal protection and denial of due process;

5.   This Court has pendent jurisdiction of Claimant's claims under the Louisiana

Civil Code Article 2315 and General Louisiana Tort Law for intentional

infliction of emotional distress and denial of due process, substantive and

procedural.

## VENUE OF NON-RICO CLAIMS

6.   Claimants and defendants reside in this District and in the Middle District of

Louisiana, however, this action arose in this District.

## PARTIES

7.   Claimant ABLE SECURITY AND PATROL, LLC, is a licensed and insured

private security patrol company located in New Orleans, Louisiana.   Able

Security and Patrol, LLC was established and registered with the Louisiana

Secretary of State as a Limited Liability on May 21,2001.   ABLE is home-

4

based with an Occupational License in Orleans Parish by virtue of review, evaluation, and approval of the Superintendent of Police, New Orleans Police Department, Lie. 11-235949.0.   Before Katrina they had a branch office located at 3939 Veterans Boulevard, Suite 215 in Metairie, LA 70002.   ABLE was, and is, licensed with the Louisiana State Board of Private Security Examiners, Lic. # 0514.

8.  Claimant HENRY JOLLY is a person of the full age of majority, domiciled within the jurisdictional territory of this Court and, at all pertinent times, owner, operator and CEO of ABLE SECURITY AND PATROL, LLC.

9.  Defendant STATE OF LOUISIANA, through the LOUISIANA STATE BOARD OF PRIVATE SECURITY EXAMINERS, is a governmental entity capable of suing and being sued.

10.  Defendant LOUISIANA STATE BOARD OF PRIVATE SECURITY EXAMINERS (hereinafter, BOARD), is an entity and governmental arm of the State of Louisiana which is capable of suing and being sued.

11.  Defendant JANE RYLAND is a person fo the full age of majority domiciled in the middle district of this state who, at all pertinent times, was the coordinator of the BOARD.

12.  Defendant WAYNE R. ROGILLIO is a person fo the full age of majority domiciled in the middle district of this state who, at all pertinent times, was the EXECUTIVE SECRETARY of the BOARD.

13.   Defendant JOHN DOE a person fo the full age of majority domiciled in the middle district of this state who, at all pertinent times, was a member of the BOARD.

14.   Defendant JANE DOE is a person of the full age of majority domiciled in the middle district of this state who, at all pertinent times, was a member of the BOARD.

15.   Defendants JAMES AND JOAN DOE are persons of the full age of majority domiciled outside of this state who, at all pertinent times, were managers, directors, employees, agents of one or more of the defendant security companies.

16.   **CORPORATE SECURITY SOLUTIONS, INC.**, hereinafter CSSI, is a Michigan corporation doing business within the jurisdictional territory of this Court;

17.   **CHRISTOPHER WILLIAM FRAIN**, is a person of the full age of majority and owner of defendant Corporate Security Solutions, Inc., and domiciled in Grand Rapids, Michigan.

18.   **MARSH USE INC. INSURANCE COMPANY**, is a Michigan corporation doing business within the jurisdictional territory of this Court who, at all pertinent times, had in force and effect a policy of insurance covering the liability of CSSI and Christopher William Frain.

19.   **ABLE SECURITY & INVESTIGATIONS OF LOUISIANA, LLC**, hereinafter

"Bogus Able", is a domestic corporation doing business within the jurisdictional territory of this Court;

20. **WALTER D. ROBERTS** is a person of the full age of majority and owner of defendant "Bogus Able", and domiciled in Baton Rouge, Louisiana.

21. **EL DORADO INSURANCE AGENCY, INC.**, is a Texas corporation doing business within the jurisdictional territory of this Court who, at all pertinent times, had in force and effect a policy of insurance covering the liability of defendants "Bogus Able" and Walter D. Roberts.

22. **BLACKWATER SECURITY CONSULTANTS, LLC**, hereinafter "BSC", is a North Carolina corporation doing business within the jurisdictional territory of this Court.

23. **ERIK DEAN PRINCE** is a person of the full age of majority and owner of defendant BSC and domiciled in Mayook, North Carolina.

24. **COMMERCIAL INSURANCE GROUP, INC.**, is a Kansas corporation doing business within the jurisdictional territory of this Court who, at all pertinent times, had in force and effect a policy of insurance covering the liability of defendants BSC and Erik Dean Prince.

## FACTS

### History and qualifications of Claimants

25. Approximately ten (10) years ago claimant Henry Jolly retired from the Federal Civil Service in April 1997.

26.   Claimant established Able Security and Patrol. LLC in 2001, which was established and registered with the Louisiana Secretary of State as a Limited Liability on May 21, 2001.

27.   ABLE SECURITY has, and at all pertinent times had, an Occupational License in Orleans Parish by virtue of review, evaluation, and approval of the Superintendent of Police, New Orleans Police Department, Lic. # 060294.

28.   ABLE SECURITY also has, and at all pertinent times had, an Occupational License in Jefferson Parish, Lic. # 11-235949.0.

29.   Prior to Katrina in August 2005, ABLE SECURITY had a branch office at 3939 Veterans Boulevard, Suite 215 in Metairie, LA 70002.

30.   ABLE SECURITY is, and at all pertinent times was, licensed with the Louisiana State Board of Private Security Examiners, Lic. # 0514.

31.   ABLE's upper management staff has, and at all pertinent times had, over 109 years of collective experience in personnel management, hotel and hospital security, law enforcement, and military operations.

32.   ABLE's Chief Executive Officer, Henry Jolly, is a retired U. S. Treasury Agent who, at the time of retirement, was a Senior Special Agent, GS 1811 with over twenty-one (21) years of experience which included Supervisory Criminal Investigator; Organized Crime Drug Enforcement Task Force Coordinator; Instructor at the Federal Law Enforcement Training Center, Glynco, GA; Instructor at the Internal Revenue Service Regional Training Center, Atlanta

8

GA; Instructor at the Internal Revenue Service District Training Center, New Orleans, LA; Coordinator of Covert Operations; and long term Undercover Agent.  Jolly was honorably discharged  from the U.S. Army after four (4) years of dedicated and distinguished service.  Jolly's military service included security experiences in Middle East and Far East countries as an attache' /operative with the National Security Agency (NSA).

33.   Claimants Henry Jolly and ABLE SECURITY have  been licensed with the Louisiana State Board of Private Investigator Examiners for the past seven (7) years.

34.   At all pertinent times, the Louisiana State Board of Private Security Examiners certified, and currently certifies, Jolly as a Classroom Instructor.

35.   The National Association of Certified Fraud Examiners certifies, and at all pertinent times has certified,   Jolly as a Certified Fraud Examiner. Additionally, Jolly served as Executive Officer in the U.S. Naval Sea Cadet Corp, Cottingham Division, located at the Naval Support Activity in Algiers, LA.

36.   ABLE's Chief Training Officer is, and at all pertinent times was, retired U. S. Treasury Agent and CEO and Claimant Henry Jolly.

37.   ABLE's staff includes in-house instructors certified by the Louisiana State Board of Private Security Examiners.

38.   ABLE's instructors are retired Federal Law Enforcement Agents who were former instructors at the Federal Law Enforcement Training Center in Glynco,

9

GA.

39.   ABLE was, and is, at all pertinent times,  certified as a participant in the U. S.

Small Business Administration (SBA) 8(a) DB Program, the U. S. Small

Business Administration (SBA) Hubzone Program, the Louisiana Department

of Economic Development Small and Emerging Business Development

Program (SEBD), the Loyola University Small Business Development

Program, and the Regional Transit Authority Small Disadvantaged Business

Program.

40.   At all pertinent times ABLE had  significant experience with such NON-

EXCLUSIVE accounts as: U. S. Department of Housing and Urban

Development, Housing Authority of New Orleans, Regional Transit Authority,

New Orleans African American Museum. Tulane Towers, Southern University

at New Orleans, Fox Sports Network, Adidas Sports, Gas Light Square

Apartments, Metropolitan Hospice, F. M. C. New Orleans East (Medical

Corporation), Factory 2-U Stores, The Methodist Home For Children, Hilton

Riverside, Hotel Inter-Continental, CII Carbon, National Gypsum, Empire

Stevedoring, Krewe of Endymion, Krewe of Bacchus, Krewe of Muse' , Krewe

of Alla, Krewe of Centurions, and Krewe of Aphrodite.

**Events during and After Katrina, and defendant's denial of equal protection
and due process**

41.   Only months prior to hurricane Katrina, ABLE had reasonable expectations of

10

surpassing $1,000,000.00 in Gross Receipts.

42. ABLE's office was located in a Medical Facility that provided care for severe rehabilitation and terminally ill patients. The patients could not be moved and ABLE felt obligated to remain behind to provide safety and security. As such, ABLE and it's staff were the true New Orleans first responders.

43. At the time of their rescue from the depths of Katrina by Ascension Parish Sheriffs Office, ABLE's Security Staff was responsible for saving the lives of over 175 survivors. ABLE's Security Staff saw that all survivors reached high ground and immediately attempted to secure fresh gear and weapons to resume disaster relief efforts.

44. On Friday, September 2, the ABLE staff and patients were transported via medical helicopter to a Baton Rouge hospital.

45. On Saturday, September 3, Claimants purchased vehicles, weapons, and support gear. Claimants arrived in New Orleans on September 5, surveyed and assessed the area. After seeing masses of "Black Security Tee shirts", ABLE knew that recovery was on the way and that their and other's businesses would bounce back and flourish.

46. At the time of their rescue from the depths of Katrina by the Ascension Parish Sheriff's Office, Claimants were responsible for saving over 175 survivors.

47. ABLE's security staff saw that an survivors reached high ground, and immediately attempted to secure fresh gear and weapons to resume disaster

11

relief efforts.

48.  Claimants arrived in LSBPSE's office on Monday, September 5, 2005, met with coordinator and discussed ABLE's personal and company status. ABLE advised defendants at that time that Able Security was up and running.

49.  Claimants arrived in New Orleans on September 5, 2005 surveyed and assessed the area. After seeing masses of Black Security Tee shirts", claimants knew that recovery was underway and that theirs and other's businesses would flourish.

50.  Notwithstanding ABLE's reasonable expectations to resume based on conditions, ABLE's operations were shattered by the defendants' wrongful denial of their right to operate, by defendants' allowing out of state and unlicensed security firms to operate, by allowing and being complicit in one of these out-of-state firms to violate claimants' rights under state trade and business law, by defendants favoring the bogus "Able" and other out of state and unlicensed operators to illegally operate based on race and/or ties to board members and it's officers, and by denying claimants' right to operate based on race.

51.  The Louisiana State Board of Private Security Examiners and Wayne R. Rogillio, through his position as Executive Secretary, allowed unlicensed out-of-state security companies to operate within Louisiana in violation of Louisiana R.S. 37 and Title 46, to the detriment of claimants.

12

52.   Further, defendants State of Louisiana and Executive Secretary of the Board Wayne R. Rogillio were complicit in the infringement of claimants' trade name and all rights connected thereto.

53.   The Louisiana State Board of Private Security Examiners and Wayne R. Rogillio also allowed an unlicensed out-of-state security company, *calling itself ABLE SECURITY,* to operate within Louisiana in violation of Louisiana R.S. 37 and Title 46, all to claimants' damage.

54.   Many of claimants' clients, their relocated security officers and competitors told ABLE about the Bogus Able's practices and extensive contracts in Louisiana.

55.   Furthermore, the "bogus Able" has deceived claimants' clients and additional clients and claimants' competitors to think that they are either claimants' company or are, at minimum, affiliated with claimants.

56.   Claimants have complained to the State of Louisiana and, specifically, to Wayne R. Rogillio in his capacity as Executive Secretary of and through the Louisiana State Board of Private Security Examiners to no avail.

57.   Conversely, Claimants have been practically forced out of business as a result of the Louisiana State Board of Private Security Examiners' and Wayne R. Rogillio's intentional and negligent acts and omissions which violated claimants' rights under the U. S. and Louisiana Constitutions, federal and state statutes, in the form of correspondence and illegal orders to cease and

13

desist operations, illegal and unwarranted threats of legal action to force claimants to cease and desist operations, illegally causing claimants to cease and desist operations, requiring documentation of insurance and other items necessary to operate of claimants when said items were previously provided and while other companies were not required to produce such documents and allowed to operate, and other acts in violation of the causes of action alleged in this complaint.

58.   Claimants requested  photocopies of all public records pertaining to the application for licensing of the bogus Able Security and Investigations; and of Black Water Security, including but not limited to the  entire application package, all Occupational Licenses (within State of Louisiana), Insurance Information, and listing of all known clients (within the State of Louisiana). Defendants and, particularly, Executive Secretary Wayne R. Rogillio refused to provide these materials.

59.   Claimants sought, through the LSBPSE and Wayne R. Rogillio in his capacity as Executive Secretary of the Board, to cause this out-of-state security company, calling itself ABLE SECURITY, operating within Louisiana in violation of Louisiana R.S. 37 and Title 46 to cease operations in Louisiana as well as pay   restitution.    Instead of doing their duties under the law, defendants used state law and their positions to favor illegal and unlicensed white security companies and to deny claimants the right to operate based on

race in violation of the U. S. Constitution and federal civil rights statutes and in violation of Louisiana Trade Name and business practice statutes.

60. Claimants requested that the defendant board contact them through "the above address or via cellular telephone numbers (504) 628-1677 or (504) 628-5403".

61. Defendants' actions, separately and in concert, damaged claimants' reputation among it's clients and others, deprived claimants of jobs and fees for services rightfully theirs, injured claimants in their future business, caused claimants to incur expenses, fees, costs and suffer emotional harm.

62. The actions of defendants were intentional, outrageous, have no place in a civilized society, and caused claimants severe emotional distress.

63. Defendants knowingly and intentionally, through the Louisiana State Board of Private Security Examiners and it's Executive Secretary Wayne R. Rogillio, allowed an unlicensed out-of-state security company, calling itself ABLE SECURITY, to operate within Louisiana in violation of Louisiana RS. 37 and Title 46, as well as other illegally operating security companies.

64. Many of ABLE's clients, relocated security officers and competitors have told ABLE about the bogus 'Able", it's practices and extensive contracts in Louisiana. Furthermore, this company has deceived clients and competitors to think that they are either ABLE (claimant) or are, at minimum, affiliated with claimants.

Examiners and Wayne R. Rogillio, in his capacity as Executive Secretary, to no avail.

66. Claimants also requested of defendants, more than once, photocopies of all public records pertaining to the application for licensing of Able Security and Investigations; Black Water Security; Corporate Security Solutions. including but not limited to: entire application package, all Occupational Licenses (within State of Louisiana), Insurance Information and listing of all known clients (within the State of Louisiana).

67. During the course of attempting, through defendants, to get these matters corrected, claimants provided a photocopy of their company's "Trade Name" recordation, and showed and explained that the Louisiana Secretary of State **_prohibits_** use of "ABLE SECURITY" without claimants' expressed written permission for the period beginning May 1, *2001 and continuing for the next ten (10) years*.

68. Claimants demanded that the board and defendant Rogillio, and demanded of the bogus "Able", that the bogus Able cease operation, to no avail, through correspondence, which stated, "We demand that this out-of-state Security company, calling itself ABLE SECURITY, operating, within Louisiana in violation of Louisiana *RS.* 37 and Title 46, to cease operations in Louisiana as well as restitution. We are allowing five (5) calendar days from the date of this

16

65.    Claimants have complained to the Louisiana State Board of Private Security

letter before proceeding without further notice."

**<u>Insurance Issue - attempt to deny Claimants the right to operate</u>**:

69. Able Security and Patrol, LLC's insurance year ran from February 4, 2005 until February 14, 2006.

70. Katrina hit on August 29, 2005, causing a major disruption in business.

71. During October 2005, claimants spoke with their insurance carrier because their insurance agent had not surfaced.

72. ABLE requested an immediate reassessment of their premium.

73. The insurance company advised that they would attempt to assist claimants and call them back.  ABLE's Security Staff reached high ground, secured fresh gear, and weapons to resume disaster relief efforts.

74. On or about early March 2006, ABLE received a CEASE and DESIST ORDER from the defendant board, over the signature of defendant Wayne R. Rogillio,   pertaining to their license to operate (company license # 514) via certified mail dated March 1, 2006.

75. Claimants contacted the board and Mr. Rogillio on or about March 5, 2006 via telephone and discussed ABLE's personnel  and company insurance status.

76. The board, through defendant Ryland, told Claimants to "...just send me the Certificate".

77. On or about May 9, 2006, claimants  faxed a copy of their Certificate of insurance to Ryland   acknowledging not the  minimum, but excessive

coverage.

78. On or about May 15, 2006, claimants received a letter dated May 10, 2006 acknowledging the defendant board's receipt of the insurance certificate, however insult came in terms of the assessed fine for failure to comply with obligations to maintain insurance coverage.

79. Claimant's ability to provide this document prior to that time was delayed by complicated insurance issues.

80. On or about May 15, 2006, claimants received a CEASE and DESIST ORDER over the signature of Wayne R. Rogillio pertaining to their classroom instructor license # 762 via certified mail dated May 11,2006.

81. Claimants contacted the Board's office on or/ about May 17,2006, via telephone and discussed personal and company insurance status with Mr. Rogillio.

82. Claimants were advised that the CEASE and DESIST ORDER would be rescinded, but the fine would be a matter for Board decision.

83. CLAIMANTS insisted that all documentation bearing the Trade Name" ABLE SECURITY is property of ABLE SECURITY. This also served as a reminder of claimants' request dated May 29, 2006,  pertaining to all original licenses bearing the "TRADE NAME" ABLE SECURITY, all letters, memoranda, and any other correspondences to be sent to our address above.

84. By this time, the other defendant security companies, including the bogus

"Able", had already damaged claimants' reputation, taken claimants' business, libeled and slandered claimants, and violated claimants' rights under federal and state law.

85.     CLAIMANTS asked the Board to "Please contact me through the above address or via cellular telephone numbers (504) 628-1677 or (504) 628-5403", to no avail.

86.     Further, the Board and, particularly, defendant Rogillio, harassed claimants and their clients through unnecessary visits by the Board's investigator to claimants' clients.

## ACTIONS OF INDIVIDUAL SECURITY COMPANY DEFENDANTS

## TRADE NAME INFRINGEMENT BY "BOGUS ABLE"

87.     Defendants "Bogus Able" and Walter D. Roberts did operate in the State of Louisiana in violation Trade Name and fair business statutes of Louisiana by operating as "Able Security", purposely profiting off of the trade name of claimant Able Security and Patrol, intentionally posing as claimant Able Security and Patrol, operating without the proper license, operating without the proper insurance, and further operating in such a way as to damage the reputation and ability to do business of claimant Able Security and Patrol.

88.     Defendant Board, Wayne R. Rogillio and other Board members knew that "Bogus Able" was committing the violations of law and regulations as alleged herein, and failed to do anything to protect Claimants' rights as a property

insured and licensed security company in Louisiana with the registered trade name "Able Security and Patrol".

89.   The name of defendant "Bogus Able" was and is confusing under pertinent Louisiana Trade Name and business statutes, and did cause claimants damage via these violations.

### OTHER VIOLATIONS BY DEFENDANT SECURITY COMPANIES

90.   Defendants CSSI, BOGUS ABLE, BSC AND THEIR RESPECTIVE OWNERS caused claimants damage by way of the following non-exclusive acts:

    a.   operating in Louisiana without the proper license, insurance, and other necessary qualifications to do business;

    b.   by soliciting claimants' clients and misrepresenting claimants' status to claimants' clients in order to get claimants' clients' business, all to the injury of claimants financially and injury to their reputation;

    c.   other acts that will be proven at trial.

### RICO FACTS AND CAUSE OF ACTION

91.   The individual defendants and the Enterprises (the BOARD, Wayne R. Rogillio, and corporate and individual defendants) have engaged in a "pattern of racketeering activity," as defined in §1961 of RICO, by committing and/or conspiring to commit or aiding and abetting transactions with at least two such acts of racketeering activity, as described herein, within the past ten years. Each act of racketeering activity was related, had similar purposes, involved

20

the same or similar participants and methods of commission, and had similar results impacting similar victims, including Plaintiff(s) herein.

92.  These predicate acts are related in the sense that they have the same purpose (to carry out the scheme described herein); result (to obtain money and deprive Claimants of business opportunity); victims (such as Claimants herein); method of commission (the scheme described herein); and are otherwise interrelated by distinguishing characteristics and are not isolated events, because they were carried out for the same purpose over a period of at least three to four years.

93.  Predicate acts were committed in the same manner, and they constituted the Enterprises' "normal" way of doing business with regard to the fraudulent and illegal attempts at closing down Claimants' business.   Further, defendants were and are also engaged in other business activities separate and apart from the scheme detailed herein, and their unlawful actions, which constitute the predicate acts giving rise to this RICO claim, are within their "normal" and "regular" way of doing business.

94.  The related predicates amount to a continued criminal activity because they extended over a substantial period of time.

95.  The Enterprises' and defendants' courses of action entails a span of years, during which Defendants committed numerous, related predicate acts as part of their continuing scheme.   Also, the predicate acts are closely intertwined

21

as far as actors, goals, nature, functioning and structure of the operations described herein in the persecution of Claimant(s).

96.   The multiple acts and the continuity and relatedness of racketeering activity committed and/or conspired to or aided and abetted by Defendants, as described herein, were related to each other, amount to and pose a threat of continued racketeering activity, and, therefore, constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. §1961(5).

97.   RICO protects the legitimate "enterprises" of Claimant Able and the Board from defendants' employees, officers, managers, and agents of who have committed the unlawful acts described in the "pattern of activity" described below.

98.   RICO protects the public from defendants who would unlawfully use an "enterprise" (legitimate or illegitimate) as a vehicle through which to commit the fraudulent and illegal schemes described herein.

99.   The persons of the employees, managers, officers and other agents of the enterprises have used the legitimate enterprises to carry out their scheme upon the Claimants as well as to victimize the corporate persons of corporate defendant and the Board.

100.  The Association in Fact of the employees, managers, officers and agents of the enterprises, and the corporate defendants have used their Association in Fact to carry out their scheme upon the victims.  Their Association exists

22

separate and apart from the racketeering activity.  The Case Statement will show that each member acted as a part of a unit, and that the whole unit was necessary to carry out the scheme.

101. The pattern of racketeering activity herein is made through fraudulent misrepresentations and claims through the U. S. Mail and telephone.  These communications include fraudulent misrepresentations and fraudulent and illegal claims of lack of insurance and lack of other requirements by Claimants that are required to operate, fraudulent claims by corporate defendants regarding their licenses to operate, their qualifications to operate, their insurance to operate, and their identities.      The U. S. Mails were used to send correspondence designed to perpetuate and support the scheme.  These communications have been made continuously over more than a two year period by   the employees, managers, officers and other agents of the enterprises   in their capacity as managers, officers and agents of the enterprises.

102. These communications, the conduct of the schemes and the enterprises themselves have all been continuing over at least a two year period, and function as a unit in the perpetuation of the scheme and accomplishment of its goals.

103. The enterprises: the Board and its members, the corporate defendants and their owners, and the employees, officers, agents of the enterprises.

23

104. With the Board, Rogillio and the Corporate defendants as the enterprises, the persons existing separate and distinct from them are the employees, officers and agents thereof.

105. With the Association in Fact (corporate defendants, individual defendants and the Board) as the enterprise, the enterprise still exists separate and apart from the pattern of activity.  Each member of the Association has his, her or its legitimate business outside of the activities of the Association.

106. All claimants and victims have been injured directly and indirectly by the fraudulent schemes described herein.

107. All defendants and enterprises, at various times, participated in the conspiracy by performing tasks designed to further the scheme.

108. The defendant Board and its members received written complaints and notice and continued to make said misrepresentations and illegal claims in writing and through the U. S. Mails, and continued the scheme.  The wire and mail fraud (Title 18 U.S.C. Sections 1341 and 1343) violations alleged are indictable offenses:

a.   the schemes involved the fraudulent and illegal

b.   All defendants, both in their roles as participants and victims, the Association in Fact and others used the mails, telephone and other methods of interstate communication in furtherance of the scheme;

c.   defendants had specific intent to prevent Claimants from conducting and

24

participating in the security business, and to take Claimants business, by devising, participating in and abetting the scheme.

d.      defendant Rogillio, as Executive Secretary of the Board, used his position and influence to illegally prevent claimants from conducting business and allowing the other defendant security companies to illegally conduct business to Board members and Mr. Rogillio's financial benefit.

## COUNT I - RICO

## DEFENDANTS ARE GUILTY OF CIVIL VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

### The Rico Enterprise

109.   Claimants are "person(s)" within the meaning of 18 U.S.C. §1964( c ).

101.   At all times relevant hereto, Claimants and Defendants were "persons" within the meaning of 18 U.S.C. §1961(3).

102.   An enterprise need not be a specific legal entity but rather may be "any union or group of individuals associated in fact although not a legal entity."

103.   Defendants did knowingly, unlawfully, and intentionally combine, confederate, conspire and agree together with each other, and with co-conspirators and others whose names are both known and unknown, to benefit and use proceeds from Defendants' pattern of racketeering activity for the furtherance of the legitimate aspects of the organization, such as stockholder dividends,

employee and executive salaries, bonuses and operating expenses, to purchase and acquire goods and services, direct the proceeds of the racketeering activity into the general funds of these Defendant organizations, their employees, their executives, their stockholders, their subcontractors and others. This violation was in concert with corrupt and/or inept employees and agents, other companies, attorneys, constituting an association in fact for the purpose of racketeering activity.

106. The enterprise at issue in this case, for purposes of 18 U.S.C. §§1961(3) and 1962(a), 1962(b), 1962© and 1962(d), is an association-in-fact of all Defendants referred to herein.   Additional wrongdoers that may be part of the association-in-fact enterprise (sometimes referred to herein as "Member" or "Members") include the individual Defendants themselves, those employees and agents of the individual Defendants and other non-defendant entities or co-conspirators that participated in the fraudulent misrepresentations to the Claimants, the public, the courts, and various regulatory and enforcement agencies.

107. While the defendants participated in the enterprise and were a part of it, the Defendants also have an existence separate and distinct from the Enterprise.

108. Defendants maintained an interest in and control of the Enterprise and also conducted or participated in the conduct of the Enterprise's affairs through a pattern of racketeering activity.

109.   Defendants' control and participation in the Enterprise were necessary for the successful operation of Defendants' scheme.

110.   The Enterprise had an ascertainable structure separate and apart from the pattern of racketeering activity in which the Defendants engaged.

111.   The Enterprise, the Association in Fact and their respective members worked together to orchestrate the schemes at issue and shared profits therefrom. The association-in-fact enterprise and the Enterprise were comprised of formal, ongoing relationships which functioned as a continuing unit, pursuing a course of conduct with a common or shared purpose and continuity of structure and personnel (including partners, associates and support staff). On information and belief, the schemes herein are just an example of those in which the Enterprise, the Association in Fact and all respective members of each participated as a decision-making, functioning unit.

112.   Defendants and those employed by and/or associated with the Enterprises and the Association in Fact, both of which engaged in interstate commerce, have conducted the affairs of the respective enterprises through a pattern of racketeering activity in violation of 18 U.S.C. §§1962(a), (b), and © and have conspired to violate §1962(a) - © in violation of 1962(d) by illegally prohibiting Claimants from conducting business, taking Claimants' business and Trade Name, and conducting business based on fraudulent, false representations.

113.   All Defendants have violated 18 U.S.C. §1962(d), inasmuch as they knowingly,

27

intentionally, and unlawfully, in aiding and abetting each other, conspired to conduct and participate, directly or indirectly, in the conduct of the affairs of the Enterprises through the pattern of racketeering activity described herein.

### Defendants' Scheme

114. For a period of time known and unknown, defendants herein violated Claimants' constitutional rights, rights under the Civil Rights Act, rights to conduct business and enjoy their Trade Name, right to operate, by illegally charging claimants with violations of operating procedures and threatening and causing cease and desist orders to issue, by illegally forcing claimants' out of business, or preventing them to operate, through the illegal use of their position with the State of Louisiana, by allowing other security companies to operate illegally and to take claimants' business, contact claimants' clients, and to misrepresent claimants' status with claimants' clients to the financial benefit of members of the Board, Mr. Rogillio and defendant security companies.   This scheme was carried out through the mails and in this district.

115. Following are additional, non-exclusive, acts and omissions by defendants and said acts, omissions and violations alleged against all defendants named herein, in concert with other defendants as yet unknown or unnamed, constitute RICO and other violations of law against petitioners for which they should pay damages:

28

**LSBPSE and its personnel**

1.  failed to protect Able Security from outside intrusion of unlicensed company;

2.  failed to act with prudent judgment when warned by LA Secretary of State against potential problems that cause existing Able Security closeness of name;

3.  failed to enforce laws pertaining to LARS 37 and Title 46, in particular, filing of false application for company license, registration of certifiable security officers and required training;

4.  illegally maliciously issued cease and decease orders against legitimate LSBPSE Licenses;

5.  maliciously assessed fines for technical violations that were beyond Able Security control, i.e. lapse in insurance coverage;

6.  failed to timely certify applicants for security officer registrations;

7.  failed to timely issue security officer registration cards;

8.  improperly, and illegally rendered referrals security services and security training to "Good Ole Boy" network participants, i.e. Louis Gurvich Jr., New Orleans Private Patrol, and Paul Graffeo, Professional Security Training aimed at monopoly and price gouging within the Private Security Industry;

9.  provided safe working environment to unlicensed out-of-state private security companies;

10. altered firearms training verification form causing damage to public records;

11. failed to provide due process with regards to Able Security dispute of malicious fines pertaining to lapse of insurance, i.e. failure to issue subpoena,

29

failure to provide documentary evidence, and failure to provide required witnesses;

12.   All defendants used telephone, mail, public office and public employees to facilitate their schemes.

## ABLE SECURITY AND INVESTIGATIONS OF LA, LLC

1.   filed false application for company license;

2.   deceived clients, competitors, and general public by failing to distinguish their company from Able Security;

3.   constructively converted working relationship/contracts with clients after Hurricane Katrina;

4.   caused irreparable damage to company reputation by continuing to charge clients for unperformed work;

5.   illegally received and negotiated security services proceeds belonging to Able Security;

6.   knowingly disregarded and violated LARS 37 and Title 46, in particular security officer registrations, security officer training, and uniforms

7.   All defendants used telephone, mail, banks, private interstate carrier to facilitate their scheme.

## CEDRIC W. DAVIS/ FIVE STAR PROTECTION SERVICES and the BOGUS "ABLE SECURITY" AND INVESTIGATIONS OF LA.

1.   Cedric W. Davis, acting on behalf of out-of-state Able Security, deceitfully and deceptively interfered with the working relationship between Able Security and a current client causing the constructive conversion(s) of contracts belonging

to Able Security;

2.   Cedric W. Davis maintained involvement with others known or unknown while causing irreparable damage to company reputation, and economic base for reconstruction;

3.   created Five Star Protection Services, a private security company owned solely by Cedric W. Davis;

4.   Davis further alienated Able Security from its clients and revenue by converting the previously stolen private security contracts to Five Star Protection Services;

5.   knowingly disregarded and violated LA RS 37 and Title 46 in particular, filing false application for company license, security officer registrations, security officer training, use of illegal weapons, and uniforms;

6.   All defendants used telephone, mail, banks, wire, interstate private carrier to facilitate the scheme.

## CORPORATE SECURITY SOLUTIONS

1.   knowingly disregarded and violated LA RS 37 and Title 46 in particular security officer registrations, security officer training, weapons, and uniforms;

2.   illegally attempt to solicit involvement of Able Security in an elaborate scheme by which Corporate Security Solutions Inc would pay Able Security 3% of gross private security proceeds in accordance with any private security services in which Able Security was claimed as a legitimate minority sub-contractors, whereas, Able Security is never expected and discouraged from performing any of the actual private security services;

31

3.     All defendants made use of telephone, mail, banks, interstate carrier to facilitate violations of LARS 37 and Title 46.

**BLACKWATER**

1.     knowingly disregarded and violate LARS 37 and Title 46 in particular security officer registrations, security officer training, illegal use of weapons, and uniforms;

2.     All defendants made use of telephone, wire, banks, interstate carrier to facilitate violations of LARS 37 and Title 46.

## NON-RICO CAUSES OF ACTION

## COUNT II - THE CONSPIRACY

116.  At all times pertinent, the defendants conspired, confederated, and agreed among themselves to deprive claimants of their rights to equal protection and due process under federal law, as alleged, and to deprive them of their rights under state law and regulations, as alleged herein.  As such, the individual actions of the defendants are imputable to one another as a matter of law.

## THE BACKGROUND

117.  The allegations comprise the background facts, allegations and overt acts which constitute the following violations of law.  Defendants' actions and omissions constitute violations of Claimants' rights under the 14th Amendment to the United States Constitution, Title 42, USC section 1983 and 1985, Federal and State Racketeering Acts, violations of Louisiana Trade and

Business Practices statutes.  The acts and omissions of defendants have caused petitioner damages in the form of humiliation, embarrassment, invasion of privacy, loss of reputation, severe mental and emotional distress, anxiety, and domestic turmoil.

## COUNT III

118.  Claimants realleage and reiterate all previous and subsequent allegations.

119.  Defendants' actions violated claimants' rights under the 14TH AMENDMENT to the United States Constitution by depriving them of equal protection and due process as alleged, based on race.

120.  Defendants' actions caused Claimants great damage in terms of loss of profits, loss of reputation, loss of income, loss of property, and mental and emotional pain and suffering for which defendants should be made to answer in damages.

## COUNT IV

121.  Claimants realleage and reiterate all previous and subsequent allegations.

122.  Defendants' actions violated claimants' rights under Title 42, USC sec. 1983 by depriving them of equal protection and due process as alleged based on race.

123.  Defendants' actions caused Claimants great damage in terms of loss of profits, loss of reputation, loss of income, loss of property, and mental and emotional pain and suffering for which defendants should be made to answer in

damages.

## COUNT V

124.   Claimants realleage and reiterate all previous and subsequent allegations.

125.   Defendants' actions violated claimants' rights under Title 42, USC sec. 1985 by conspiring to deprive them of equal protection and due process as alleged, based on race.

126.   Defendants' actions caused Claimants great damage in terms of loss of profits, loss of reputation, loss of income, loss of property, and mental and emotional pain and suffering for which defendants should be made to answer in damages.

## COUNT VI

127.   Claimants realleage and reiterate all previous and subsequent allegations.

128.   Defendants' actions violated claimants' rights under the Louisiana Racketeering Act. (La. R.S. 15:1351 *et seq.*) by conspiring to and by depriving them of equal protection and due process as alleged, based on race, and through violations of the predicate acts and omissions as alleged herein.

129.   Defendants' actions caused Claimants great damage in terms of loss of profits, loss of reputation, loss of income, loss of property, and mental and emotional pain and suffering for which defendants should be made to answer in damages.

34

## COUNT VII

130.   Claimants realleage and reiterate all previous and subsequent allegations.

131.   Defendants' actions violated claimants' rights under  Louisiana Unfair Trade Practices and Consumer Protection Act.   (La. R.S. 51:1401 *et seq.*)by conspiring to and by  depriving  them of equal protection and due process as alleged, based on race, and through violations of the predicate acts and omissions as alleged herein.

132.   Defendants' actions caused Claimants great damage in terms of loss of profits, loss of reputation, loss of income, loss of property, and mental and emotional pain and suffering for which defendants should be made to answer in damages.

## COUNT VIII

133.   Claimants realleage and reiterate all previous and subsequent allegations.

134.   Defendants' actions violated claimants' rights under  Articles 2315 and 2324 of the Louisiana Civil Code. by conspiring to and by  depriving  them of equal protection and due process as alleged, based on race, and through violations of the  acts and omissions as alleged herein.

135.   Defendants' actions caused Claimants great damage in terms of loss of profits, loss of reputation, loss of income, loss of property, and mental and emotional pain and suffering for which defendants should be made to answer in damages.

136. Further, under this Count, defendants intentionally caused claimants great and severe emotional harm, intended to cause said harm, and did so by the execution of acts and omissions that have no place in a civilized society.

## COUNT IX

### NEGLIGENT AND INTENTIONAL MISREPRESENTATION

137. Claimants realleage and reiterate all previous and subsequent allegations.

138. Defendants' actions violated claimants' rights under Articles 2315 and 2324 of the Louisiana Civil Code through negligent and intentional misrepresentation.

139. The defendant State of Louisiana, through the BOARD, Wayne R. Rogillio, other Board members, owed Claimants duties of care, loyalty and honesty, and a duty to comply with the applicable standards of care and the laws of the State of Louisiana and the United States, and any and all regulations governing the exercise of their duties.

140. During the course of their dealings with Claimants, the State of Louisiana, the Board, Wayne R. Rogillio and other individual members of the Board, defendants made numerous knowingly and negligently false affirmative representations, and intentional or negligently misleading omissions of fact as set forth above.

141. The State through the Board and Mr. Rogillio, and other members of the Board, either knew or reasonably should have known that their

36

representations, instructions, and opinions were false.   In addition, the rendering of such representations, instructions and opinions, as well as the failure to advise Claimants of the omissions as set forth herein, was negligent, grossly negligent, and reckless.

142.   Claimants fully performed their obligations as directed by the State defendants and the law and regulations governing their operation, and thus did not contribute to the intentional, negligent, grossly negligent, and/or reckless acts in any way.

143.   In reasonable reliance on the State defendants' false affirmative representations and intentional omissions of material facts, Claimants incurred expenses, costs and damages both personally and financially.

144.   But for the State defendants' failure to meet the applicable standard of care and follow the applicable State and Federal laws and regulations governing their activities,  and the intentional and/or negligent misrepresentations and material omissions described herein, Claimants would not have suffered damages.

145.   After discovering the State defendants' misrepresentations,   Claimants incurred and will continue to incur substantial additional costs in the prosecution of this case, and in the loss of other financial opportunities.

146.   As a proximate cause of the foregoing, Claimants have been injured in an actual amount to be proven at trial, and should be awarded damages in

accordance with the evidence, plus attorneys' fees and costs.

147.  Defendants' actions caused Claimants great damage in terms of loss of profits, loss of reputation, loss of income, loss of property, and mental and emotional pain and suffering for which defendants should be made to answer in damages.

148.  Further, under this Count, defendants intentionally caused claimants great and severe emotional harm, intended to cause said harm, and did so by the execution of acts and omissions that have no place in a civilized society.

## COUNT X

149.  The aforementioned wrongful acts and omissions, and those developed through discovery, constitute a violation of the Louisiana Unfair Trade Practices and Consumer Protection Act.  (La. R.S. 51:1401 *et seq.*)

150.  Louisiana Unfair Trade Practices and Consumer Protection Law, LSA R.S. 51:1401 prohibits unfair or deceptive methods, acts or practices in trade or commerce.

151.  The defendant have engaged in unfair and deceptive trade practices for the purpose and with the effect of obtaining tremendous business advantage, and for the purpose of putting claimants out of business.

152.  The defendants were in the business of providing and regulating security services in the State of Louisiana.   Their activity, as alleged, was unrelated to traditional business practices of the security industry, as contemplated by the

38

Louisiana Unfair Trade Practices and Consumer Protection Law.

153.   As a result of Defendants' violation of the Louisiana Unfair Trade Practices and Consumer Protection Law, claimants are entitled, pursuant to LSA R.S. 51:1408, to damages.

WHEREFORE, Claimants Henry Jolly and Able Security and Patrol, LLC, pray that this petition be filed and served on all defendants, and after due proceedings for judgment for all legal, compensatory, equitable, punitive, nominal and other damages in amounts that this Court deems necessary and appropriate.

Respectfully Submitted:

_____
John-Michael Lawrence (8143)
John-Michael Lawrence, LLC
Energy Center - Suite 2900 - PMB 204
1100 Poydras Street
New Orleans, La. 70163-2900
(504) 585-7797 tel
(225) 744-8748 fax