UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ABLE SECURITY AND PATROL, LLC, *  CIVIL ACTION NO.
AND HENRY JOLLY       07-1931

           *

VS            SECTION "T"

STATE OF LOUISIANA, et al     MAG: 4
_____*

## FIRST AMENDED AND SUPPLEMENTAL
## COMPLAINT FOR VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT [RICO],  42 U.S.C. 1983 AND 1985, THE 14TH AMENDMENT TO THE U.S. CONSTITUTION, THE LOUISIANA CONSTITUTION AND LOUISIANA STATE LAW

As per Order of Court, Petitioners Supplement and Amend their original

complaint as follows:

### JURISDICTION

1. This Court has jurisdiction over Petitioners' various claims under the

following statutes:

2. Plaintiff brings this action against Defendants for their violations of the

**Racketeer Influenced and Corrupt Organizations Act**, 18 U.S.C. §1961,

*et seq* and for other causes of action as set forth herein.

 a. This Honorable Court has jurisdiction over this civil action pursuant

to 18 U.S.C. §§1962(a), (b), ( c ) and (d), 1964( c ), and 28 U.S.C. §§1331

and 1337.  This is a civil action arising under 18 U.S.C. §§1961-1968,

§901(a) of Title IX of the Organized Crime Control Act of 1970, as

1

amended, otherwise known as the Racketeer Influenced and Corrupt

Organizations Act ("RICO"), and in particular, under 18 U.S.C. §1964 and

other causes of action as set forth hereafter.

## **VENUE OF RICO CLAIM**

3.    Venue of RICO claim lies within this district:

a.    Venue lies with this district pursuant to 18 U.S.C. §1965 and

28 U.S.C. §1391.  Defendants at relevant times conducted substantial

business in this district.   The violations occurred in this district.

Defendants transact or have transacted their affairs in this district, and their

conduct, upon which this action is founded, was directed at and intended to

injure Plaintiff(s) in this district.

b.    Defendants, either on their own or through their agents, at the time of

the commission of the acts alleged hereunder, were found in, and/or

transacted business in the State of Louisiana, and the cause of action

which is the object of this Complaint arises out of business transactions in

the State of Louisiana, including specific acts within this district.

c.    Defendants, either on their own or through their agents, conspired to

commit within the State of Louisiana the wrongful acts alleged in this

Complaint and/or committed or participated in the commission of those acts

within or without the State of Louisiana, purposefully directing their

wrongful acts toward the forum of Louisiana, causing in Louisiana, directly

2

or indirectly, the violations of RICO and the other causes of action set forth herein and Plaintiffs' resultant injuries.

d.      Defendants' racketeering activities were conducted through a pattern of acts and transactions which occurred and/or had their effect within the State of Louisiana, in this district.

e.      In connection with the acts and conduct described herein, the Defendants directly or indirectly used the means of interstate commerce, including the mails and telephones.

### NON-RICO CAUSES OF ACTION

4.      This Court has jurisdiction over the following Non-RICO claims:

a.      The **5th and 14th Amendments to  the United States Constitution** for violations of petitioners' rights of equal protection against arbitrary, capricious and discriminatory state action and violations of due process based on race;

b.      **42 U.S.C.  1981 and 1983** for discrimination based on race and violations of equal protection based on race and through the exercise of state authority and action and violations of due process based on race;

c.      **42 U.S.C. 1985** for conspiracy to discriminate based on race and to violate petitioners' rights of equal protection based on race and through the exercise of state authority and action and conspiracy to violate

petitioners' rights of due process;

    d.    Under State Law - **General tort law and La. Civil Code 2315**, et seq - intentional infliction of emotional distress;

    e.    Under the Louisiana State Constitution and Louisiana **General Tort Law** for violations of equal protection and denial of due process;

    f.    Under the Louisiana Racketeering Act (La. R. S. 15:1351, et seq.),

    g.    Under the Louisiana Unfair Trade Practices and Consumer Protection Act (LUTPA) (La. R. S. 51:1405 et seq.),

    h.    and the Louisiana Constitution.

5.    This Court has pendent jurisdiction of Claimant's claims under the Louisiana Civil Code Article 2315, 2324 and General Louisiana Tort Law for intentional infliction of emotional distress and denial of due process, substantive and procedural.

## VENUE OF NON-RICO CLAIMS

6.    Claimants and defendants reside in this District and in the Middle District of Louisiana, this action arose in this District, and other defendants have done business in and continue to do business in this District.

## PARTIES

7.    Claimant ABLE SECURITY AND PATROL, LLC, (hereinafter, "Able Security") is a licensed and insured private security patrol company located in New Orleans, Louisiana.   Able Security and Patrol, LLC was established and

registered with the Louisiana Secretary of State as a Limited Liability on May 21,2001.   ABLE is home-based with an Occupational License in Orleans Parish by virtue of review, evaluation, and approval of the Superintendent of Police, New Orleans Police Department, Lie. 11-235949.0.   Before Katrina they had a  branch office located at 3939 Veterans Boulevard, Suite 215 in Metairie, LA 70002.   ABLE was, and is, licensed with the Louisiana State Board of Private Security Examiners, Lic. # 0514.

8.   Claimant HENRY JOLLY  is a  person of the full age of majority, domiciled within the jurisdictional territory of this Court and, at all pertinent times, owner, operator and CEO of ABLE SECURITY AND PATROL, LLC.

9.   Defendant STATE OF LOUISIANA, through the LOUISIANA STATE BOARD OF PRIVATE SECURITY EXAMINERS,   is a governmental entity capable of suing and being sued.

10.   Defendant LOUISIANA STATE BOARD OF PRIVATE SECURITY EXAMINERS (hereinafter, BOARD), is an entity and governmental arm of the State of Louisiana which is capable of suing and being sued.

11.   Defendant WAYNE R. ROGILLIO is a person fo the full age of majority domiciled in the middle district of this state who, at all pertinent times, was the EXECUTIVE SECRETARY of the BOARD.

12.   Defendants JOHN and JANE DOE are persons of the full age of majority domiciled in the middle district of this state who, at all pertinent times, were

5

members of the BOARD.

13.   Defendants JAMES AND JOAN DOE are persons of the full age of majority domiciled outside of this state who, at all pertinent times, were managers, directors, employees, agents of one or more of the defendant security companies.

14.   **CORPORATE SECURITY SOLUTIONS, INC.**, hereinafter CSSI, is a Michigan corporation doing business within the jurisdictional territory of this Court;

15.   **CHRISTOPHER WILLIAM FRAIN**, is a person of the full age of majority and owner of defendant Corporate Security Solutions, Inc., and domiciled in Grand Rapids, Michigan.

16.   **MARSH USE INC. INSURANCE COMPANY** is a Michigan corporation doing business within the jurisdictional territory of this Court who, at all pertinent times, had in force and effect a policy of insurance covering the liability of CSSI and Christopher William Frain.

17.   **ABLE SECURITY & INVESTIGATIONS OF LOUISIANA, LLC**, hereinafter "Able of Texas", is a foreign corporation doing business within the jurisdictional territory of this Court;

19.   **WALTER D. ROBERTS** is a person of the full age of majority and owner of defendant "Able of Texas", and domiciled in Baton Rouge, Louisiana.

20.   **EL DORADO INSURANCE AGENCY, INC.**, is a Texas corporation doing

business within the jurisdictional territory of this Court who, at all pertinent times, had in force and effect a policy of insurance covering the liability of defendants "Able of Texas" and Walter D. Roberts.

21. **BLACKWATER SECURITY CONSULTANTS, LLC**, hereinafter "BSC", is a North Carolina corporation doing business within the jurisdictional territory of this Court.

22. **ERIK DEAN PRINCE** is a person of the full age of majority and owner of defendant BSC and domiciled in Mayook, North Carolina.

23. **COMMERCIAL INSURANCE GROUP, INC**., is a Kansas corporation doing business within the jurisdictional territory of this Court who, at all pertinent times, had in force and effect a policy of insurance covering the liability of defendants BSC and Erik Dean Prince.

## FACTS

**History and qualifications of Claimants**

24. Approximately ten (10) years ago claimant Henry Jolly retired from the Federal Civil Service in April 1997.

25. Claimant established Able Security and Patrol. LLC in 2001, which was established and registered with the Louisiana Secretary of State as a Limited Liability on May 21, 2001.

26. ABLE SECURITY has, and at all pertinent times had, an Occupational License in Orleans Parish by virtue of review, evaluation, and approval of the

7

Superintendent of Police, New Orleans Police Department, Lic. # 060294.

27.   ABLE SECURITY also has, and at all pertinent times had, an Occupational License in Jefferson Parish, Lic. # 11-235949.0.

28.   Prior to Katrina in August 2005, ABLE SECURITY had a branch office at 3939 Veterans Boulevard, Suite 215 in Metairie, LA 70002.

29.   ABLE SECURITY is, and at all pertinent times was, licensed with the Louisiana State Board of Private Security Examiners, Lic. # 0514.

30.   ABLE's upper management staff has, and at all pertinent times had, over 109 years of collective experience in personnel management, hotel and hospital security, law enforcement, and military operations.

31.   ABLE's Chief Executive Officer, Henry Jolly, is a retired U. S. Treasury Agent who, at the time of retirement, was a Senior Special Agent, GS 1811 with over twenty-one (21) years of experience which included Supervisory Criminal Investigator; Organized Crime Drug Enforcement Task Force Coordinator; Instructor at the Federal Law Enforcement Training Center, Glynco, GA; Instructor at the Internal Revenue Service Regional Training Center, Atlanta GA; Instructor at the Internal Revenue Service District Training Center, New Orleans, LA; Coordinator of Covert Operations; and long term Undercover Agent.   Jolly was honorably discharged  from the U.S. Army after four (4) years of dedicated and distinguished service.  Jolly's military service included security experiences in Middle East and Far East countries as an attache'

8

/operative with the National Security Agency (NSA).

32.    Claimants Henry Jolly and ABLE SECURITY have  been licensed with the Louisiana State Board of Private Investigator Examiners for the past seven (7) years.

33.    At all pertinent times, the Louisiana State Board of Private Security Examiners certified, and currently certifies, Jolly as a Classroom Instructor.

34.    The National Association of Certified Fraud Examiners certifies, and at all pertinent times has certified,  Jolly as a Certified Fraud Examiner. Additionally, Jolly served as Executive Officer in the U.S. Naval Sea Cadet Corp, Cottingham Division, located at the Naval Support Activity in Algiers, LA.

35.    ABLE's Chief Training Officer is, and at all pertinent times was, retired U. S. Treasury Agent and CEO and Claimant Henry Jolly.

36.    ABLE's staff includes in-house instructors certified by the Louisiana State Board of Private Security Examiners.

37.    ABLE's instructors are retired Federal Law Enforcement Agents who were former instructors at the Federal Law Enforcement Training Center in Glynco, GA.

38.    ABLE was, and is, at all pertinent times,  certified as a participant in the U. S. Small Business Administration (SBA) 8(a) DB Program, the U. S. Small Business Administration (SBA) Hubzone Program, the Louisiana Department of Economic Development Small and Emerging Business Development

9

Program (SEBD), the Loyola University Small Business Development Program, and the Regional Transit Authority Small Disadvantaged Business Program.

39.   At all pertinent times ABLE had  significant experience with such NON-EXCLUSIVE accounts as: U. S. Department of Housing and Urban Development, Housing Authority of New Orleans, Regional Transit Authority, New Orleans African American Museum. Tulane Towers, Southern University at New Orleans, Fox Sports Network, Adidas Sports, Gas Light Square Apartments, Metropolitan Hospice, F. M. C. New Orleans East (Medical Corporation), Factory 2-U Stores, The Methodist Home For Children, Hilton Riverside, Hotel Inter-Continental, CII Carbon, National Gypsum, Empire Stevedoring, Krewe of Endymion, Krewe of Bacchus, Krewe of Muse' , Krewe of Alla, Krewe of Centurions, and Krewe of Aphrodite.

**Events during and After Katrina, and defendant's denial of equal protection and due process**

40.   Only months prior to hurricane Katrina, ABLE had reasonable expectations of surpassing  $1,000,000.00 in Gross Receipts.

41.   ABLE's office was located in a Medical Facility that provided care for severe rehabilitation and terminally ill patients.  The patients could not be moved and ABLE felt obligated to remain behind to provide safety and security.  As such, ABLE and it's staff  were the true New Orleans first responders.

10

42.  At the time of their rescue from the depths of Katrina  by Ascension Parish Sheriffs Office, ABLE's Security Staff was responsible for saving the lives of over 175 survivors.   ABLE's Security Staff saw that all survivors reached high ground and immediately attempted to secure fresh gear and weapons to resume disaster relief efforts.

43.  On Friday, September 2, the ABLE staff and patients were transported via medical helicopter to a Baton Rouge hospital.

44.  On Saturday, September 3, Claimants purchased vehicles, weapons, and support gear.   Claimants  arrived in New Orleans on September 5, surveyed and assessed the area.   After seeing masses of "Black Security Tee shirts", ABLE knew that recovery was on the way and that their and other's businesses would bounce back and  flourish.

45.  At the time of their rescue from the depths of Katrina by the Ascension Parish Sheriff's Office, Claimants were responsible for saving over 175 survivors.

46.  ABLE's security staff saw that an survivors reached high ground, and immediately attempted to secure fresh gear and weapons to resume disaster relief efforts.

47.  Claimants arrived in LSBPSE's  office on Monday, September 5, 2005, met with  coordinator and discussed ABLE's  personal and company status. ABLE advised defendants at that time that Able Security was up and running.

48.  Claimants  arrived in New Orleans on September 5,  2005 surveyed and

11

assessed the area. After seeing masses of Black Security Tee shirts", claimants knew that  recovery was underway and that theirs and other's businesses would flourish.

49. Notwithstanding ABLE's reasonable expectations to resume based on conditions, ABLE's operations were shattered by the defendants' wrongful denial of their right to operate, by defendants' allowing out of state and unlicensed security firms to operate, by allowing and being complicit in one of these out-of-state firms to violate claimants' rights under state trade and business law, by defendants favoring the bogus "Able" and other out of state and unlicensed operators to illegally operate based on race and/or ties to board members and it's officers, and by denying claimants' right to operate based on race.

50. The Louisiana State Board of Private Security Examiners and Wayne R. Rogillio, through his position as Executive Secretary, allowed unlicensed out-of-state security companies to operate within Louisiana in violation of Louisiana R.S. 37 and Title 46, to the detriment of claimants.

51. Further, defendants State of Louisiana and Executive Secretary of the Board Wayne R. Rogillio were complicit in the infringement of claimants' trade name and all rights connected thereto.

52. The Louisiana State Board of Private Security Examiners and Wayne R. Rogillio also allowed an unlicensed out-of-state security company, *calling itself*

*ABLE SECURITY,* to operate within Louisiana in violation of Louisiana R.S. 37 and Title 46, all to claimants' damage.

53.   Many of claimants' clients, their relocated security officers and competitors told ABLE about the Able of Texas's practices and extensive contracts in Louisiana.

54.   Furthermore, the "bogus Able" has deceived claimants' clients and additional clients and claimants' competitors to think that they are either claimants' company or are, at minimum, affiliated with claimants.

55.   Claimants have complained to the State of Louisiana and, specifically, to Wayne R. Rogillio in his capacity as Executive Secretary of and through the Louisiana State Board of Private Security Examiners to no avail.

56.   Conversely, Claimants have been practically forced out of business as a result of the Louisiana State Board of Private Security Examiners' and Wayne R. Rogillio's intentional and negligent acts and omissions which violated claimants' rights under the U. S. and Louisiana Constitutions, federal and state statutes, in the form of correspondence and illegal orders to cease and desist operations, illegal and unwarranted threats of legal action to force claimants to cease and desist operations, illegally causing claimants to cease and desist operations, requiring documentation of insurance and other items necessary to operate of claimants when said items were previously provided and while other companies were not required to produce such documents and

allowed to operate, and other acts in violation of the causes of action alleged in this complaint.

57.   Claimants requested  photocopies of all public records pertaining to the application for licensing of the ABLE of Texas Security and Investigations; and of Black Water Security, including but not limited to the  entire application package, all Occupational Licenses (within State of Louisiana), Insurance Information, and listing of all known clients (within the State of Louisiana). Defendants and, particularly, Executive Secretary Wayne R. Rogillio refused to provide these materials.

58.   Claimants sought, through the LSBPSE and Wayne R. Rogillio in his capacity as Executive Secretary of the Board, to cause this out-of-state security company, calling itself ABLE SECURITY, operating within Louisiana in violation of Louisiana R.S. 37 and Title 46 to cease operations in Louisiana as well as pay   restitution.   Instead of doing their duties under the law, defendants used state law and their positions to favor illegal and unlicensed white security companies and to deny claimants the right to operate based on race in violation of the U. S. Constitution and federal civil rights statutes and in violation of Louisiana Trade Name and business practice statutes.

59.   Claimants requested that the defendant board contact them through "the above address or via cellular telephone numbers (504) 628-1677 or (504) 628-5403".

60.    Defendants' actions, separately and in concert, damaged claimants' reputation among it's clients and others, deprived claimants of jobs and fees for services rightfully theirs, injured claimants in their future business, caused claimants to incur expenses, fees, costs and suffer emotional harm.

61.    The actions of defendants were intentional, outrageous, have no place in a civilized society, and caused claimants severe emotional distress.

62.    Defendants knowingly and intentionally, through the Louisiana State Board of Private Security Examiners and it's Executive Secretary Wayne R. Rogillio, allowed an unlicensed out-of-state security company, calling itself ABLE SECURITY, to operate within Louisiana in violation of Louisiana RS. 37 and Title 46, as well as other illegally operating security companies.

63.    Many of ABLE's clients, relocated security officers and competitors have told ABLE about the bogus 'Able", it's practices and extensive contracts in Louisiana. Furthermore, this company has deceived clients and competitors to think that they are either ABLE (claimant) or are, at minimum,  affiliated with claimants.

64.    Claimants have complained to the Louisiana State Board of Private Security Examiners and Wayne R. Rogillio, in his capacity as Executive Secretary,  to no avail.

65.    Claimants also requested of defendants, more than once, photocopies of all public records pertaining to the application for licensing of Able Security and

Investigations; Black Water Security; Corporate Security Solutions. including but not limited to: entire application package, all Occupational Licenses (within State of Louisiana), Insurance Information  and listing of all known clients (within the State of Louisiana).

66.  During the course of attempting, through defendants, to get these matters corrected, claimants provided a photocopy of their company's "Trade Name" recordation, and showed and explained that the Louisiana Secretary of State ***prohibits*** use of "ABLE SECURITY"  without claimants' expressed written permission for the period beginning  May 1, *2001 and continuing for the next ten (10) years.*

67.  Claimants demanded that the board and defendant Rogillio, and demanded of the bogus "Able", that the ABLE of Texas cease operation, to no avail, through correspondence, which stated, "We demand that this out-of-state Security company, calling itself ABLE SECURITY, operating, within Louisiana in violation of Louisiana *RS.* 37 and Title 46, to cease operations in Louisiana as well as restitution. We are allowing  five (5) calendar days from the date of this letter before proceeding without further notice."

**Insurance Issue - attempt to deny Claimants the right to operate**:

68.  Able Security and Patrol, LLC's insurance year ran from February 4, 2005 until February 14, 2006.

69.  Katrina hit on August 29, 2005, causing a major disruption in business.

70.    During October 2005, claimants spoke with their insurance carrier because their insurance agent had not surfaced.

71.    ABLE requested an immediate reassessment of their premium.

72.    The insurance company advised that they would attempt to assist claimants and call them  back.   ABLE's Security Staff reached high ground, secured fresh gear, and weapons to resume disaster relief efforts.

73.    On or about early March 2006, ABLE received a CEASE and DESIST ORDER from the defendant board, over the signature of defendant Wayne R. Rogillio,   pertaining to their license to operate (company license # 514) via certified mail dated March 1, 2006.

74.    Claimants contacted the board and Mr. Rogillio on or about March 5, 2006 via telephone and discussed ABLE's personnel  and company insurance status.

75.    The board, through defendant Ryland, told Claimants to "...just send me the Certificate".

76.    On or about May 9, 2006, claimants  faxed a copy of their Certificate of insurance to Ryland  acknowledging not the minimum, but excessive coverage.

77.    On or about May 15, 2006, claimants received a letter dated May 10, 2006 acknowledging the defendant board's receipt of the insurance certificate, however insult came in terms of the assessed fine for failure to comply with obligations to maintain insurance coverage.

78.   Claimant's ability to provide this document prior to that time was delayed by complicated insurance issues.

79.   On or about May 15, 2006, claimants received a CEASE and DESIST ORDER over the signature of Wayne R. Rogillio pertaining to their classroom instructor license # 762 via certified mail dated May 11,2006.

80.   Claimants contacted the Board's office on or/ about May 17,2006, via telephone and discussed personal and company insurance status with Mr. Rogillio.

81.   Claimants were advised that the CEASE and DESIST ORDER would be rescinded, but the fine would be a matter for Board decision.

82.   CLAIMANTS insisted that all documentation bearing the Trade Name" ABLE SECURITY is property of ABLE SECURITY. This also served as a reminder of claimants' request dated May 29, 2006,  pertaining to all original licenses bearing the "TRADE NAME" ABLE SECURITY, all letters, memoranda, and any other correspondences to be sent to our address above.

83.   By this time, the other defendant security companies, including the bogus "Able", had already damaged claimants' reputation, taken claimants' business, libeled and slandered claimants, and violated claimants' rights under federal and state law.

84.   CLAIMANTS asked the Board to "Please contact me through the above address or via cellular telephone numbers (504) 628-1677 or (504) 628-5403",

18

to no avail.

85.   Further, the Board and, particularly, defendant Rogillio, harassed claimants and their clients through unnecessary visits by the Board's investigator to claimants' clients.

## ACTIONS OF INDIVIDUAL SECURITY COMPANY DEFENDANTS

## TRADE NAME INFRINGEMENT BY "Able of Texas"

86.   Defendants "Able of Texas" and Walter D. Roberts did operate in the State of Louisiana in violation Trade Name and fair business statutes of Louisiana by operating as "Able Security", purposely profiting off of the trade name of claimant Able Security and Patrol, intentionally posing as claimant Able Security and Patrol, operating without the proper license, operating without the proper insurance, and further operating in such a way as to damage the reputation and ability to do business of claimant Able Security and Patrol.

87.   Defendant Board, Wayne R. Rogillio and other Board members knew that "Able of Texas" was committing the violations of law and regulations as alleged herein, and failed to do anything to protect Claimants' rights as a property insured and licensed security company in Louisiana with the registered trade name "Able Security and Patrol".

88.   The name of defendant "Able of Texas" was and is confusing under pertinent Louisiana Trade Name and business statutes, and did cause claimants damage via these violations.

19

## OTHER VIOLATIONS BY DEFENDANT SECURITY COMPANIES

89.   Defendants CSSI, Able of Texas, BSC AND THEIR RESPECTIVE OWNERS

caused claimants damage by way of the following non-exclusive acts:

a.   operating in Louisiana without the proper license, insurance, and other

necessary qualifications to do business;

b.   by soliciting claimants' clients and misrepresenting claimants' status to

claimants' clients in order to get claimants' clients' business, all to the

injury of claimants financially and injury to their reputation;

c.   other acts that will be proven at trial.

## RICO FACTS AND CAUSE OF ACTION

90.   The individual defendants and the Enterprises (the BOARD, Wayne R.

Rogillio, and corporate and individual defendants) have engaged in a "pattern

of racketeering activity," as defined in §1961 of RICO, by committing and/or

conspiring to commit or aiding and abetting transactions with at least two such

acts of racketeering activity, as described herein, within the past ten years.

Each act of racketeering activity was related, had similar purposes, involved

the same or similar participants and methods of commission, and had similar

results impacting similar victims, including Plaintiff(s) herein.

91.   These predicate acts are related in the sense that they have the same

purpose (to carry out the scheme described herein); result (to obtain money

and deprive Claimants of business opportunity); victims (such as Claimants

herein); method of commission (the scheme described herein); and are otherwise interrelated by distinguishing characteristics and are not isolated events, because they were carried out for the same purpose over a period of at least three to four years.

92.   Predicate acts were committed in the same manner, and they constituted the Enterprises' "normal" way of doing business with regard to the fraudulent and illegal attempts at closing down Claimants' business.   Further, defendants were and are also engaged in other business activities separate and apart from the scheme detailed herein, and their unlawful actions, which constitute the predicate acts giving rise to this RICO claim, are within their "normal" and "regular" way of doing business.

93.   The related predicates amount to a continued criminal activity because they extended over a substantial period of time.

94.   The Enterprises' and defendants' courses of action entails a span of years, during which Defendants committed numerous, related predicate acts as part of their continuing scheme.   Also, the predicate acts are closely intertwined as far as actors, goals, nature, functioning and structure of the operations described herein in the persecution of Claimant(s).

95.   The multiple acts and the continuity and relatedness of racketeering activity committed and/or conspired to or aided and abetted by Defendants, as described herein, were related to each other, amount to and pose a threat of

continued racketeering activity, and, therefore, constitute a "pattern of racketeering activity" within the meaning of 18 U.S.C. §1961(5).

96.    RICO protects the legitimate "enterprises" of Claimant Able and the Board from defendants' employees, officers, managers, and agents of who have committed the unlawful acts described in the "pattern of activity" described below.

97.    RICO protects the public from defendants who would unlawfully use an "enterprise" (legitimate or illegitimate) as a vehicle through which to commit the fraudulent and illegal schemes described herein.

98.    The persons of the employees, managers, officers and other agents of the enterprises have used the legitimate enterprises to carry out their scheme upon the Claimants as well as to victimize the corporate persons of corporate defendant and the Board.

99.    The Association in Fact of the employees, managers, officers and agents of the enterprises, and the corporate defendants have used their Association in Fact to carry out their scheme upon the victims.  Their Association exists separate and apart from the racketeering activity.  The Case Statement will show that each member acted as a part of a unit, and that the whole unit was necessary to carry out the scheme.

100.   The pattern of racketeering activity herein is made through fraudulent misrepresentations and claims through the U. S. Mail and telephone.  These

communications include fraudulent misrepresentations and fraudulent and illegal claims of lack of insurance and lack of other requirements by Claimants that are required to operate, fraudulent claims by corporate defendants regarding their licenses to operate, their qualifications to operate, their insurance to operate, and their identities.    The U. S. Mails were used to send correspondence designed to perpetuate and support the scheme.  These communications have been made continuously over more than a two year period by  the employees, managers, officers and other agents of the enterprises  in their capacity as managers, officers and agents of the enterprises.

101.  These communications, the conduct of the schemes and the enterprises themselves have all been continuing over at least a two year period, and function as a unit in the perpetuation of the scheme and accomplishment of its goals.

102.  The enterprises: the Board and its members, the corporate defendants and their owners, and the employees, officers, agents of the enterprises.

103.  With the Board, Rogillio and the Corporate defendants  as the enterprises, the persons existing separate and distinct from them are the employees, officers and agents thereof.

104.  With the Association in Fact (corporate defendants, individual defendants and the Board) as the enterprise, the enterprise still exists separate and apart from

the pattern of activity.  Each member of the Association has his, her or its legitimate business outside of the activities of the Association.

105.   All claimants and victims have been injured directly and indirectly by the fraudulent schemes described herein.

106.   All defendants and enterprises, at various times, participated in the conspiracy by performing tasks designed to further the scheme.

107.   The defendant Board and its members received written complaints and notice and continued to make said misrepresentations and illegal claims in writing and through the U. S. Mails, and continued the scheme.  The wire and mail fraud (Title 18 U.S.C. Sections 1341 and 1343) violations alleged are indictable offenses:

a.   the schemes involved the fraudulent and illegal

b.   All defendants, both in their roles as participants and victims, the Association in Fact and others used the mails, telephone and other methods of interstate communication in furtherance of the scheme;

c.   defendants had specific intent to prevent Claimants from conducting and participating in the security business, and to take Claimants business, by devising, participating in and abetting the scheme.

d.   defendant Rogillio, as Executive Secretary of the Board, used his position and influence to illegally prevent claimants from conducting business and allowing the other defendant security companies to

illegally conduct business to Board members and Mr. Rogillio's financial

benefit.

## **SUPPLEMENTAL AND AMENDING RICO CASE STATEMENT**

1.    **State whether the alleged unlawful conduct is in violation of 18 U.S.C. Sections 1962(a), (b), ( c ), and/or (d).  If you allege violations of more than one Section 1962 subsections, treat each as a separate RICO claim.**

The alleged behavior of defendants violates

**1962(a):**

*"Using or investing the proceeds of any income derived from a pattern of racketeering or the collection of an unlawful debt, in which that person participated as a principal, to establish, operate or acquire any interest in any enterprise engaged in or affecting interstate commerce."*

as the described conduct of the defendant Board members and the owner/operators of the defendant security companies show, these individuals (1) use the proceeds of the described conduct to invest in their security companies, (2) use the proceeds of their activities to establish and maintain the security companies, (3) use the proceeds of the described activity to maintain their positions on the Board and (4) all individuals use their positions, through the Board and the security companies, to operate as an Association in Fact to perpetrate the scheme against Petitioners.

**1962(b):**

*"acquiring an interest in or control of an enterprise through a pattern of racketeering activity or through the collection of unlawful debt."*

the described conduct shows that the individual members of the Board and the individual owners/operators of the security companies acquire interest in the Board and the security

25

companies through the false and fraudulent schemes to establish business for those entities by the taking of established business from Petitioner.

**(1) the conduct**

Defendants Board and security companies acted in concert to remove Petitioner's from the business of private security patrol, and to take over Petitioners' established customers Post Katrina, by the illegal suppression of Petitioners' ability to do business through the Boards use of State authority.  This was done through the elimination of Petitioner in the business to the advantage and profit of the Board and defendant security firms, who operated illegally in Louisiana with the assistance of the Board.    The false and fraudulent charges of non-compliance, the maintaining of Petitioners' inoperable status based on the false and fraudulent charges of non-compliance, the false and fraudulent presentation of defendant security companies as legitimate Louisiana security firms and the billing based on these false representations were all accomplished as part of the conspiracy and RICO scheme through the U. S. Mails.

A.    Petitioners ABLE SECURITY AND PATROL, LLC, ("ABLE LOUISIANA") and HENRY JOLLY ("JOLLY"), operated as a security and patrol company before and after Hurricane Katrina, fully insured, licensed, and having met all requirements of state law and regulations of defendant LOUISIANA STATE BOARD OF PRIVATE SECURITY EXAMINERS (BOARD), a regulating arm of the State of Louisiana for the security and patrol industry, headed by defendant ROGILLO.

B.    After Hurricane Katrina, the defendants BOARD and ROGILLO issued by way of the United States mails, false and fraudulent  notices to ABLE LOUISIANA

AND JOLLY falsely alleging that petitioners were in non-compliance with Louisiana law and their regulations in terms of licensing, insurance, and other regulatory matters.

C.     ABLE LOUISIANA and JOLLY complained to the BOARD and ROGILLO and fought for their rights to operate and their rights of equal protection through the U. S. Mails.

D.     The defendants BOARD and ROGILLO responded to Petitioners' appeals and continued to intentionally and wrongfully keep petitioners from operating through the U. S. Mails by maintaining the cease and desist orders, which were based on false and fraudulent allegations and charges of non-compliance.

E.     While petitioners  ABLE LOUISIANA and JOLLY, and other domestic security companies similarly situated, were kept out of business via the fraudulent cease and desist orders "supported" by the false and fraudulent allegations of non-compliance, the  defendants BOARD and ROGILLO suspended these same rules, laws and regulations for out of state companies, specifically, the named security company defendants.


F.     Each of these individual security companies benefitted financially from the defendants BOARD and ROGILLO's forcing petitioners out of business through the use of the illegal, false and fraudulent complaints from the defendants BOARD and ROGILLO   falsely alleging Petitioners' non-compliance.

G.     Each of the individual security company defendants knowingly operated illegally in Louisiana, in non-compliance of the same requirements which the defendants BOARD and ROGILLO falsely charged petitioners with not having or meeting.

H.     The defendant security companies hired themselves out to petitioners' already established pre-Katrina customers and fraudulently represented themselves as legitimate security companies in Louisiana through documents sent to customers and the Board through the U. S. Mails.

I.     In addition to hiring themselves out to petitioners' already established pre-Katrina customers, one or more of the defendant security companies told some of petitioners' pre-Katrina customers that petitioners were out of business due to non-compliance, lack of license, lack of insurance, or other knowingly false and fraudulent allegations.

J.     Defendant Able of Texas masqueraded as petitioner and in doing so violated petitioners' rights under state law and other federal statutes.  Defendant ABLE of Texas violated the trademark and other business rights of petitioner, with the help of the BOARD and ROGILLO, and in spite of petitioners' complaints to the BOARD to perform their legal duty and protect petitioners' rights to operate.

K.     The defendants BOARD, ROGILLO and the individual security company defendants acted together and in concert for the joint purpose of eliminating Petitioners and other similarly situated security companies from continuing to operate after Katrina so that the defendant security companies could

28

absorbing and take petitioners' business, customers, reputation and measurable profits in easily determined amounts.

**(2) of an enterprise**

The Board is a legitimate state entity, with a right to sue and be sued.  It's member and chair, defendant Rogillo, and other unknown members, operate through the legitimate Board, via their positions, to illegally force Petitioners our of business and replace Petitioners with the defendant security companies.   The Petitioners are ordered to cease and desist by Rogillo and the Board members while the security companies are allowed to operate illegally and take Petitioners' business while being in non-compliance status.

The security companies are, upon information and belief, legitimate foreign security companies who, through the owners and operators of these companies, illegally operate in Louisiana, in an agreement with the Board who allows them to operate illegally, by taking the business of Petitioners and similarly situated security companies.   Discovery may show, however, that one of more of the security companies were formed for the specific purpose of perpetuating the scheme as a member of the Association in Fact of Rogillo, unknown Board members, owner and operators of the security companies, and the security companies.

Rogillo and unknown members of the Board operate in concert with the owners and operators of the security companies to illegally push Petitioners out of their legitimately established businesses and to replace Petitioners with the illegally operating security companies.  In this manner, Rogillo and unknown members of the Board and the owners and operators of the security companies operate as an Association in Fact to conspire to commit racketeering through their positions with the Board and the security companies.

29

Upon information and belief, the defendant security companies are otherwise legitimate operations outside of Louisiana with a legitimate existence outside of the RICO scheme.

Alternatively, discovery may show that one or more of the defendant security companies were created to commit the RICO violations and to participate in the scheme against petitioners.    If that proves to be the case, then the security companies are not legitimate enterprises and exist for the sole purpose of the scheme to monopolize petitioner's business.

**(3) through a pattern**

Since Katrina, defendant Rogillo and unknown members of the Board, in concert with the defendant security companies, have illegally had false and fraudulent cease and desist orders issued against Petitioners and similarly situated security companies, while the defendant security companies operated illegally with the consent of the Board members to absorb and take the established business of the Petitioners.    Petitioners have been embroiled in an ongoing effort to appeal the fraudulent cease and desist orders only to have the members of the Board continue to enforce those orders while the defendant security companies take Petitioners' established business and profits.    This pattern of activity has continued for nearly three years.

**(4) of racketeering activity**

Through the false and fraudulent cease and desist orders, and the false and fraudulent documents in support thereof, sent through the U. S. Mails, the Board and its members have with knowledge to the contrary, falsely accused petitioners of non-compliance

30

and repeatedly, continuously and over a period of years illegally forced Petitioners to not operate.   The security companies have maintained the false and fraudulent representation to Petitioners' customers that they are legitimately operating in Louisiana through the mailing of the solicitation of business, billing, and other documents sent through the mails to the customers, the Board and other state agencies to maintain their false presentation of legality. This activity has happened over the years since Katrina.

**1962 ( c ):**

***"conducting the affairs of an enterprise through a pattern of racketeering activity or through collection of an unlawful debt."***

The individual defendants, through the false and fraudulent cease and desist orders to Petitioners from the Board (as described above), and the false and fraudulent representations to Petitioners' customers from the security companies (as described above), and the false and fraudulent documents between the Board members and the owner/operators of the security companies to "support" their illegally operating in Louisiana (as described above), over a nearly three year period, conducts the business of the Board and the security companies in activities that affect interstate commerce through the taking of the property of Petitioners and others similarly situated..

**1962(d):**

***"unlawful for any person to conspire to violate Sections 1962(a), 1962(b), and 1962 ( c )."***

All defendants conspired to commit the acts alleged and operated in concert as described.

31

2. **List _each_ defendant and state the alleged misconduct and basis of liability of each defendant.**

    A.    The individual owner/operators of the security companies. These individuals sent fraudulent and false representations to businesses in Louisiana, falsely representing that they were legally operating in the state. These individual had to send false and fraudulent documents to the Board and its members to support the false representation that they operated legally in the state.

    B.    The individual Board members sent false and fraudulent cease and desist orders to Petitioners, and sent false and fraudulent allegations of non-compliance to Petitioners, to eliminate Petitioners from the private security business which the Board regulates.

    C.    The individuals conspired together and operated together to produce the end result: the elimination of Petitioners in the private security business to the financial advantage of the individual defendants.

3. **List the alleged wrongdoers, other than the defendants listed above, and state the alleged misconduct of each wrongdoer.**

    None at this time.

4. **List the alleged victims and state how each victim allegedly was injured.**

    Able Security and Jolly as Owner and Operator lost already established business over the time that they could not operate, lost the ability to continue business with pre-Katrina clients, lost new post Katrina business, and their reputation suffered due to the negligent performance of duties of the ABLE OF TEXAS. All of which translates into loss of business profit and past, present and future income which are easily determinable and quantifiable.

5. **Describe in detail the pattern of racketeering activity or collection of an unlawful debt alleged for each RICO claim. A description of the pattern of racketeering activity shall include the following information:**

a.    List the alleged predicate acts and the specific statutes allegedly violated;

The BOARD and ROGILLO, as an enterprise and as a member of the Association in Fact:

.  Fraud, wire fraud and mail fraud in making and sending, through U. S. Mail, the false and fraudulent allegations of non-compliance and in issuing the false and fraudulent cease and desist orders, and in enforcing said orders.  Malfeasance (under state law) and intentional discrimination (under state and federal law) in the disparate treatment of petitioners as compared to out of state defendant security companies

The defendant security companies, as enterprises and members of the Association in Fact:

The security companies applied for and knowingly received permission to operate in Louisiana while not in compliance with many of the same rules, regulations and laws with which petitioners were wrongfully, falsely and fraudulently accused of being in non-compliance.  ABLE OF TEXAS further masqueraded as petitioners with petitioners' pre-Katrina clientele.   The defendant companies further conspired with and provided profit and other business advantages to defendant BOARD, ROGILLO and other unknown members of the BOARD.    The individual security company operators sent fraudulent and false representations through the mails to Petitioners customers, past and future, representing themselves as companies legally operating in Louisiana.

33

**b.    Provide the dates of the predicate acts, the participants in the predicate acts and a description of the facts surrounding each predicate act;**

The documents are dated between August 29, 2005, and the present.

The specific dates will be shown through documents produced by all parties through discovery.   These documents include, but are not limited to, applications to do business, documents from the BOARD to the defendant SECURITY COMPANIES allowing them to do business, documents alleging false non-compliance from the BOARD to petitioners, documents from petitioners to the BOARD regarding the false claims of non-compliance and the cease and desist orders.  Documents from the security companies to customers falsely representing themselves as legal security companies in Louisiana.

**c.    If the RICO claim is based upon the predicated offenses of wire fraud, mail fraud, fraud in the sale of securities, or fraud in connection with a case under U.S.C. Title 11, the "circumstances constituting fraud or mistake shall be stated with particularity," Fed. R. Civ. P. 9(b).  Identify the time, place and contents of persons to whom and by whom the alleged misrepresentations or omissions were made;**

As described above, the individual defendants mailed documents falsely and fraudulently alleging the following:

1.    That petitioners were in non-compliance - from the Board members to Petitioners,

2.    That the individual defendant security companies were in compliance - from the Board members to Petitioners,

3.    That the individual security companies were legitimate companies in Louisiana - to the customers of Petitioners,

4.    Documents re billing, advertising and solicitation from the security companies to customers and the Board which falsely represent the individual security companies as legitimately operating in Louisiana.

**d.    Describe whether the alleged predicate acts relate to the enterprise as part of a common plan.  If so, describe in detail.**

The fraudulent documents sent by U. S. Mail (solicitation of customers claiming to be legally operating in this state,   documents sent to the Board to help continue the illegal operation in the state, allegations of non-compliance from the Board to Petitioners, correspondence re denial of appeals of cease and desist orders sent by the Board to Petitioners, billing records mailed to customers when the security companies were in non-compliance of state law and the Board's regulations, any and all reports, records, claims of compliance mailed from the security companies to the Board or any other state agency) all of which supported and continue to support the common plan of the members of the Board and owner/operators of the security companies to freeze out the legitimate security businesses in Louisiana, such as Petitioners,  and replace them with the out of state defendants would show favor to ROGILLO AND THE BOARD in the form of money, business advantage, or other interests.

**6.    Describe in detail the alleged enterprise for each RICO claim.  A description of the enterprise and include the following information:**

**a.    State the names of the individuals, partnerships, corporations, associations or other entities allegedly constituting the enterprise;**

1.    The Board is a legitimate state entity run by the individual defendants

Rogillo and other Board members, and used by Rogillo and unknown others to eliminate private security company competition in favor of the illegally operating defendant security companies.

2. The individual security companies are, upon information and belief, legitimate out of state companies who are used by the individual defendants to operate illegally in Louisiana in concert with the Board, and to take the business of Petitioners post-Katrina.

3. The members of the Board and owner/operators of the security companies form an Association in Fact for the mission of carrying out the scheme.

**b.   Describe the structure, purpose, roles, function and course of conduct of the enterprise;**

Petitioners are ABLE SECURITY AND PATROL, LLC, ("ABLE SECURITY") and HENRY JOLLY ("JOLLY").   Jolly is and was, at all pertinent time, the owner/operator of Petitioner Able Security, a security and patrol company before and after Hurricane Katrina.   Able Security is, and was at all pertinent times, fully insured, licensed, and in compliance with all requirements of state law and regulations of defendant LOUISIANA STATE BOARD OF PRIVATE SECURITY EXAMINERS (BOARD), a regulating arm of the State of Louisiana for the security and patrol industry, headed by defendant ROGILLO.

After Hurricane Katrina, the BOARD issued fraudulent notices to ABLE SECURITY AND JOLLY alleging that Petitioners were in non-compliance with Louisiana law and certain regulations regarding licensing, insurance, and other regulatory matters, all of which were false.   ABLE SECURITY and JOLLY received the BOARD's false and fraudulent correspondence and cease and desist orders

36

through the U. S. Mail, and immediately informed the BOARD that they were, in fact, in full compliance with all state law and Board regulations through the U. S. Mail and by telephone.    In spite of this knowledge of compliance both before and after the issuance of the cease and desist orders, the BOARD and ROGILLO kept ABLE SECURITY AND JOLLY from operating via the bogus cease and desist orders and allegations, false and fraudulent allegations and fraudulent charges of non-compliance, and the Board's continued campaign to keep Petitioners from operating while the following defendant security companies knowingly operated without being in compliance with the Board, and with the Board's blessing as part of the RICO conspiracy:

a.    **CORPORATE SECURITY SOLUTIONS, INC.,**  (CSSI) a Michigan corporation owned and operated by defendant **CHRISTOPHER WILLIAM FRAIN** (FRAIN).

b.    **ABLE SECURITY & INVESTIGATIONS OF LOUISIANA, LLC**, (ABLE OF TEXAS), owned and operated by defendant **WALTER D. ROBERTS** (ROBERTS).

c.    **BLACKWATER SECURITY CONSULTANTS, LLC**, (BLACKWATER), owned and operated by defendant **ERIK DEAN PRINCE** (PRINCE).

Additionally, ABLE OF TEXAS, by operating in Louisiana as "ABLE" security, violated the trademark and other business rights of petitioner, with the help of the BOARD and ROGILLO, and in spite of petitioners' complaints to the BOARD to

perform their legal duty to protect petitioners' rights to operate.

Finally, an additional motive for the BOARD was the discriminatory enforcement of state laws and the BOARD's rules and regulations, in violation of Petitioners' rights under the Constitution and Title 42, sections 1981 and 1983.  As co-conspirators and actors with the state agency, the defendant security companies are liable with the Board under 42 U.S.C 1985.

This scheme has continued from September 2005 to the present.

    **c.**    **State whether any defendants are employees, officers or directors of the alleged enterprise.**

    1.    **CORPORATE SECURITY SOLUTIONS, INC.,** (CSSI) a Michigan corporation owned and operated by defendant **CHRISTOPHER WILLIAM FRAIN** (FRAIN).

    2.    **ABLE SECURITY & INVESTIGATIONS OF LOUISIANA, LLC,** (ABLE OF TEXAS), owned and operated by defendant **WALTER D. ROBERTS** (ROBERTS).

    3.    **BLACKWATER SECURITY CONSULTANTS, LLC,** (BLACKWATER), owned and operated by defendant **ERIK DEAN PRINCE** (PRINCE).

    4.    **Defendant Rogillo** is chairman and/or a controlling member of the **Board** in another capacity.

    **d.**    **State whether any defendants are associated with the alleged enterprise, and if so, how;**

        See section c.

    **e.**    **State whether you alleged that the defendants are individuals or entities separate from the alleged enterprise, or that the defendants are the enterprise itself, or members of the enterprise;**

The individual described above (owner/operators of the security companies and

Rogillo of the Board) are individuals that exist separate and apart from the enterprises of the Board and the Security companies.  However, these individuals also form an Association in Fact that exist for the sake of the scheme.

>    **f.    If you allege any defendants to be the enterprise itself, or members of the enterprise, explain whether such defendants are perpetrators, passive instruments, or victims of the alleged racketeering activity.**

The individually named defendants are the Association in Fact.   The security companies, upon information and belief, have legitimate existence outside of the state, but that can be shown to be false through discovery.   The Board has an existence separate and apart from Rogillo.

**7.    State whether you allege and describe in detail how the pattern of racketeering activity and the enterprise are separate or have merged into one entity.**

The Association in Fact exist to perpetuate the scheme.  The BOARD is an otherwise legitimate entity run in this context illegally.    It is unknown at this time whether the DEFENDANT SECURITY COMPANIES have a legitimate existence outside of the ASSOCIATION IN FACT, if they do, those companies have an existence outside of the illegal scheme and outside of Louisiana.

**8.    Describe the alleged relationship between the activities of the enterprise and the pattern of racketeering activity.  Discuss how the racketeering activity differs from the usual and daily activities of the enterprise, if at all.**

The BOARD has the responsibility of regulating the private security patrol business in Louisiana, and has the authority to order a business to cease and desist

operation if the business is non in compliance with the Board or state law.    The Board issued fraudulent allegations and fraudulent cease and desist orders to Petitioners.    The purpose was to keep Petitioners from operation so that the co-conspirators (owner/operators of the defendant security companies, or the security companies themselves) could then take Petitioners' business and the business of similarly situated local firms, while the defendant security companies and the individual defendant owner/operators were themselves in non-compliance - the same non-compliance that the Board fraudulently alleged against Petitioners.   The Board was used by ROGILLO AND DEFENDANT SECURITY COMPANIES to block the legal operation of ABLE SECURITY AND JOLLY and other legitimate companies through the false charges of non-compliance, fraudulent Cease and Desist Orders, and the operation by defendant security companies while in a status of non-compliance.

**9.    Describe what benefit, if any, the alleged enterprise receives from the alleged pattern of racketeering activity.**

THE BOARD, ROGILLO, other unknown members of the BOARD and the defendant owner/operators and defendant security firms profited personally by providing defendants with business in post Katrina Louisiana at the expense of ABLE SECURITY, JOLLY and other legitimate Louisiana businesses.    The defendant businesses profited from the illegal business done while in non-compliance.    The profits lost to Petitioners are easily determined.

**10.    Describe the effect of the activities of the enterprise or interstate or foreign commerce.**

40

Co-defendant SECURITY COMPANIES traveled from outside of the state to participate with the BOARD and ROGILLO in the illegal scheme to eliminate ABLE SECURITY, JOLLY and other local and legitimate companies from operating, and by providing that business to co-defendants, out of state security companies. Petitioners' business affects interstate commerce in that petitioners' business requires licensing, training, goods and services acquired through interstate commerce.

11.   **If the complaint alleges a violation of 18 U.S.C. Section 1962(a), provide the following information:**

    a.   **State who received the income derived from the pattern of racketeering activity or through the collection of an unlawful debt;**

Rogillo, unknown members of the Board, the defendant security companies through their owner/operators.

    b.   **Describe the use or investment of such income.**

The security companies use the funds to run their companies and pay their employees.   Rogillo and the unknown members of the Board profit personally from the scheme, but it is unknown whether these individuals invest in any business.

12.   **If the complaint alleges a violation of 18 U.S.C. Section 1962(b), provide the following information:**

    a.   **Describe in detail the acquisition or maintenance of any interest in or control of the alleged enterprise; and,**

An interest in the Association in Fact is acquired by participation in the scheme.

An interest in the security companies is maintained through profits derived while in non-compliance in Louisiana.

Rogillo and the unknown Board members use their positions for illegal profit, but the Board is an entity in which no one invests except tax payers, who are cheated out of being able to operate in this state due to the conduct of the defendants individually and as an Association in Fact.

        **b.**   **State whether the same entity is both the liable "person" and the "enterprise" under Section 1962(b).**

Rogillo and the unknown Board members are liable parties separate from the Board.   The Board, as an entity, upon information and belief, has a legitimate existence outside of the activities of defendants Rogillo and unknown Board members.

The owner/operators, provided the defendant security firms have a legitimate existence outside of Louisiana, are the liable parties who are using legitimate enterprises for their illegal operation.   However, should discovery show no legitimate existence of the security companies outside of Louisiana, then the companies themselves are also liable parties.

**13.**   **If the complaint alleges a violation of 18 U.S.C Section 1962 ( c ), provide the following information:**

        **a.**   **State who is employed by or associated with the enterprise.**

See above answer.

        **b.**   **State whether the same entity is both the liable "person" and the "enterprise" under Section 1962 ( c ).**

The BOARD is the enterprise, legitimate but operated in an illegal fashion by ROGILLO and other UNKNOWN MEMBERS OF THE BOARD as their employees.

The ASSOCIATION IN FACT is both liable party and enterprise.   It's only function and reason for existence if the scheme.

It is unknown at this point whether the DEFENDANT SECURITY COMPANIES are legitimate business out of state and are only operated illegally by its owners and members, or whether the DEFENDANT SECURITY COMPANIES were formed specifically to participate in this scheme.

**14.   If the complaint alleges a violation of 18 U.S.C. Section 1962(d), describe in detail the alleged conspiracy;**

The defendants had to act in concert to have the security companies operate in Louisiana while in non-compliance.   The BOARD AND ROGILLO had to freeze out petitioners and others similarly situated to provide the business for defendant security companies for motives of profit.

**15.   Describe the alleged injury to business or property;**

Petitioners lost clientele, lost contract time with clients both lost and not lost through the fraud and deception of defendants, lost future income and present income, suffered in its reputation and ability to do work due to loss of income, loss of personnel, loss of infrastructure since they could not operate due to the illegal cease and desist orders.   All damages are easily determined and not speculative.

**16.   Describe the relationship between the alleged injury and violation of the RICO statute.**

The violation of the RICO statute is how defendants accomplished the illegal cease and desist orders and simultaneously allowed defendant security firms to do

business without a license, insurance and other requirements petitioners had, but the Board denied.

The bogus violations and bogus cease and desist orders were accomplished through the mail.    Further, the BOARD and ROGILLO conspired with defendant companies to violate ABLE SECURITY AND JOLLY's rights under the business and trademark statutes of Louisiana  and the U. S. Constitution for their mutual benefit. These matters were accomplished through the mail.

**17.    List the damages sustained by reason of the violation of Section 1962, indicating the amount for which each defendant allegedly is liable.**

Defendants are jointly and severally liable.  The monetary amount of loss of business, particularly present and future,  continues to be calculated.    All fees charged Petitioners' customers, all expenses incurred by Petitioners to remain afloat while the Board fraudulently put them out of business, all new business acquired by defendant firms.   All damages are calculable, but the documentation is in the possession of defendants.

**18.    List all other federal causes of action, if any, and provide the relevant statute numbers.**

Petitioners allege violations of Title 42, U. S. C. sec. 1983, 1985, and the 5th and 14th Amendments to the United States Constitution.

**19.    List all pendant state claims, if any.**

Petitioners allege violation of the Louisiana RICO statute, La. R. S. 15:1351 et seq.; La. R. S. 51:1401 - 08, et seq.; La. C. C. Arts. 2315, 2324.

20.   **Provide any additional information you feel would be helpful to the Court in processing your RICO claim.**

Nothing additional at this time.

## COUNT I - RICO

## DEFENDANTS ARE GUILTY OF CIVIL VIOLATIONS OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT

### The Rico Enterprise

109.   Claimants are "person(s)" within the meaning of 18 U.S.C. §1964( c ).

101.   At all times relevant hereto, Claimants and Defendants were "persons" within the meaning of 18 U.S.C. §1961(3).

102.   An enterprise need not be a specific legal entity but rather may be "any union or group of individuals associated in fact although not a legal entity."

103.   Defendants did knowingly, unlawfully, and intentionally combine, confederate, conspire and agree together with each other, and with co-conspirators and others whose names are both known and unknown, to benefit and use proceeds from Defendants' pattern of racketeering activity for the furtherance of the legitimate aspects of the organization, such as stockholder dividends, employee and executive salaries, bonuses and operating expenses, to purchase and acquire goods and services, direct the proceeds of the racketeering activity into the general funds of these Defendant organizations, their employees, their executives, their stockholders, their subcontractors and others.  This violation was in concert with corrupt and/or inept employees and

agents, other companies, attorneys, constituting an association in fact for the purpose of racketeering activity.

106.    The enterprise at issue in this case, for purposes of 18 U.S.C. §§1961(3) and 1962(a), 1962(b), 1962© and 1962(d), is an association-in-fact of all Defendants referred to herein.   Additional wrongdoers that may be part of the association-in-fact enterprise (sometimes referred to herein as "Member" or "Members") include the individual Defendants themselves, those employees and agents of the individual Defendants and other non-defendant entities or co-conspirators that participated in the fraudulent misrepresentations to the Claimants, the public, the courts, and various regulatory and enforcement agencies.

107.    While the defendants participated in the enterprise and were a part of it, the Defendants also have an existence separate and distinct from the Enterprise.

108.    Defendants maintained an interest in and control of the Enterprise and also conducted or participated in the conduct of the Enterprise's affairs through a pattern of racketeering activity.

109.    Defendants' control and participation in the Enterprise were necessary for the successful operation of Defendants' scheme.

110.    The Enterprise had an ascertainable structure separate and apart from the pattern of racketeering activity in which the Defendants engaged.

111.    The Enterprise, the Association in Fact and their respective members worked

together to orchestrate the schemes at issue and shared profits therefrom.  The association-in-fact enterprise and the Enterprise were comprised of formal, ongoing relationships which functioned as a continuing unit, pursuing a course of conduct with a common or shared purpose and continuity of structure and personnel (including partners, associates and support staff).  On information and belief, the schemes herein are just an example of those in which the Enterprise, the Association in Fact and all respective members of each participated as a decision-making, functioning unit.

112.   Defendants and those employed by and/or associated with the Enterprises and the Association in Fact, both of which engaged in interstate commerce, have conducted the affairs of the respective enterprises through a pattern of racketeering activity in violation of 18 U.S.C. §§1962(a), (b), and © and have conspired to violate §1962(a) - © in violation of 1962(d) by illegally prohibiting Claimants from conducting business, taking Claimants' business and Trade Name, and conducting business based on fraudulent, false representations.

113.   All Defendants have violated 18 U.S.C. §1962(d), inasmuch as they knowingly, intentionally, and unlawfully, in aiding and abetting each other, conspired to conduct and participate, directly or indirectly, in the conduct of the affairs of the Enterprises through the pattern of racketeering activity described herein.

### Defendants' Scheme

114.   For a period of time known and unknown, defendants herein violated Claimants'

constitutional rights, rights under the Civil Rights Act, rights to conduct business and enjoy their Trade Name, right to operate, by illegally charging claimants with violations of operating procedures and threatening and causing cease and desist orders to issue, by illegally forcing claimants' out of business, or preventing them to operate, through the illegal use of their position with the State of Louisiana, by allowing other security companies to operate illegally and to take claimants' business, contact claimants' clients, and to misrepresent claimants' status with claimants' clients to the financial benefit of members of the Board, Mr. Rogillio and defendant security companies.   This scheme was carried out through the mails and in this district.

115.   Following are additional, non-exclusive, acts and omissions by defendants and said acts, omissions and violations alleged against all defendants named herein, in concert with other defendants as yet unknown or unnamed, constitute RICO and other violations of law against petitioners for which they should pay damages:

**LSBPSE and its personnel**

1.   failed to protect Able Security from outside intrusion of unlicensed company;

2.   failed to act with prudent judgment when warned by LA Secretary of State against potential problems that cause existing Able Security closeness of name;

3.   failed to enforce laws pertaining to LA. R. S.  37 and Title 46, in particular,

filing of false application for company license, registration of certifiable security officers and required training;

4.  illegally maliciously issued cease and decease orders against legitimate LSBPSE Licenses;

5.  maliciously assessed fines for technical violations that were beyond Able Security control, i.e. lapse in insurance coverage;

6.  failed to timely certify applicants for security officer registrations;

7.  failed to timely issue security officer registration cards;

8.  improperly, and illegally rendered referrals security services and security training to "Good Ole Boy" network participants, i.e. Louis Gurvich Jr., New Orleans Private Patrol, and Paul Graffeo, Professional Security Training aimed at monopoly and price gouging within the Private Security Industry;

9.  provided safe working environment to unlicensed out-of-state private security companies;

10.  altered firearms training verification form causing damage to public records;

11.  failed to provide due process with regards to Able Security dispute of malicious fines pertaining to lapse of insurance, i.e. failure to issue subpoena, failure to provide documentary evidence, and failure to provide required witnesses;

12.  All defendants used telephone, mail, public office and public employees to facilitate their schemes.

## ABLE SECURITY AND INVESTIGATIONS OF LA, LLC

1.  filed false application for company license;

2.  deceived clients, competitors, and general public by failing to distinguish their

49

company from Able Security;

3. constructively converted working relationship/contracts with clients after Hurricane Katrina;

4. caused irreparable damage to company reputation by continuing to charge clients for unperformed work;

5. illegally received and negotiated security services proceeds belonging to Able Security;

6. knowingly disregarded and violated LA. R. S. 37 and Title 46, in particular security officer registrations, security officer training, and uniforms

7. All defendants used telephone, mail, banks, private interstate carrier to facilitate their scheme.

8. All allegations in the RICO standing order.

## CEDRIC W. DAVIS/ FIVE STAR PROTECTION SERVICES and the BOGUS "ABLE SECURITY" AND INVESTIGATIONS OF LA.

1. Cedric W. Davis, acting on behalf of out-of-state Able Security, deceitfully and deceptively interfered with the working relationship between Able Security and a current client causing the constructive conversion(s) of contracts belonging to Able Security;

2. Cedric W. Davis maintained involvement with others known or unknown while causing irreparable damage to company reputation, and economic base for reconstruction;

3. created Five Star Protection Services, a private security company owned solely by Cedric W. Davis;

4.   Davis further alienated Able Security from its clients and revenue by converting the previously stolen private security contracts to Five Star Protection Services;

5.   knowingly disregarded and violated LA RS 37 and Title 46 in particular, filing false application for company license, security officer registrations, security officer training, use of illegal weapons, and uniforms;

6.   All defendants used telephone, mail, banks, wire, interstate private carrier to facilitate the scheme.

7.   All allegations in the RICO standing order.

## CORPORATE SECURITY SOLUTIONS

1.   knowingly disregarded and violated LA. R. S. 37 and Title 46 in particular security officer registrations, security officer training, weapons, and uniforms;

2.   illegally attempt to solicit involvement of Able Security in an elaborate scheme by which Corporate Security Solutions Inc would pay Able Security 3% of gross private security proceeds in accordance with any private security services in which Able Security was claimed as a legitimate minority sub-contractors, whereas, Able Security is never expected and discouraged from performing any of the actual private security services;

3.   All defendants made use of telephone, mail, banks, interstate carrier to facilitate violations of LA. R. S. 37 and Title 46.

4.   All allegations in the RICO standing order.

**BLACKWATER**

1.  knowingly disregarded and violate LA. R. S. 37  and Title 46 in particular security officer registrations, security officer training, illegal use of weapons, and uniforms;

2.  All defendants made use of telephone, wire, banks, interstate carrier to facilitate violations of LA. R. S. 37 and Title 46.

3.  All allegations in the RICO standing order.

## NON-RICO CAUSES OF ACTION

## COUNT II - THE CONSPIRACY

116.  At all times pertinent, the defendants conspired, confederated, and agreed among themselves to deprive claimants of their rights to equal protection and due process under federal law, as alleged, and to deprive them of their rights under state law and regulations, as alleged herein.  As such, the individual actions of the defendants are imputable to one another as a matter of law.

## THE BACKGROUND

117.  The allegations comprise the background facts, allegations and overt acts which constitute the following violations of law.  Defendants' actions and omissions constitute violations of Claimants' rights under the 14th Amendment to the United States Constitution, Title 42, USC section 1983 and 1985, Federal and State Racketeering Acts, violations of Louisiana Trade and Business Practices statutes.  The acts and omissions of defendants have caused

petitioner damages in the form of humiliation, embarrassment, invasion of privacy, loss of reputation, severe mental and emotional distress, anxiety, and domestic turmoil.

## COUNT III

118.  Claimants realleage and reiterate all previous and subsequent allegations.

119.  Defendants' actions violated claimants' rights under the 5th and 14TH AMENDMENTS to the United States Constitution by depriving them of equal protection and due process as alleged, based on race.     The private defendants conspired with and operated in concert with the state actor, the Board, to deprive Petitioners' of their rights.

120.  Defendants' actions caused Claimants great damage in terms of loss of profits, loss of reputation, loss of income, loss of property, and mental and emotional pain and suffering for which defendants should be made to answer in damages.

## COUNT IV

121.  Claimants realleage and reiterate all previous and subsequent allegations.

122.  Defendants' actions violated claimants' rights under Title 42, USC sec. 1983 by depriving them of equal protection and due process as alleged based on race.

123.  Defendants' actions caused Claimants great damage in terms of loss of profits, loss of reputation, loss of income, loss of property, and mental and emotional pain and suffering for which defendants should be made to answer in damages.

## COUNT V

124. Claimants realleage and reiterate all previous and subsequent allegations.

125. Defendants' actions violated claimants' rights under  Title 42, USC sec. 1981, 1983 and 1985  by depriving Petitioners and conspiring to deprive them of equal protection and due process as alleged, based on race.   The private defendants conspired with and operated in concert with the state actor, the Board, to deprive Petitioners' of their rights.

126. Defendants' actions caused Claimants great damage in terms of loss of profits, loss of reputation, loss of income, loss of property, and mental and emotional pain and suffering for which defendants should be made to answer in damages.

## COUNT VI

127. Claimants realleage and reiterate all previous and subsequent allegations.

128. Defendants' actions violated claimants' rights under the Louisiana Racketeering Act.  (La. R.S. 15:1351 *et seq*.) by conspiring to and by  depriving  them of equal protection and due process as alleged, based on race, and through violations of the predicate acts and omissions as alleged herein.    And by the acts and omissions above.

129. Defendants' actions caused Claimants great damage in terms of loss of profits, loss of reputation, loss of income, loss of property, and mental and emotional pain and suffering for which defendants should be made to answer in damages.

54

## COUNT VII

130.  Claimants realleage and reiterate all previous and subsequent allegations.

131.  Defendants' actions violated claimants' rights under  Louisiana Unfair Trade Practices and Consumer Protection Act.  (La. R.S. 51:1401 *et seq.*)by conspiring to and by  depriving  them of equal protection and due process as alleged, based on race, and through violations of the predicate acts and omissions as alleged herein.  And by the acts and omissions described above.

132.  Defendants' actions caused Claimants great damage in terms of loss of profits, loss of reputation, loss of income, loss of property, and mental and emotional pain and suffering for which defendants should be made to answer in damages.

## COUNT VIII

133.  Claimants realleage and reiterate all previous and subsequent allegations.

134.  Defendants' actions violated claimants' rights under  Articles 2315 and 2324 of the Louisiana Civil Code. by conspiring to and by  depriving  them of equal protection and due process as alleged, based on race, and through violations of the  acts and omissions as alleged herein.

135.  Defendants' actions caused Claimants great damage in terms of loss of profits, loss of reputation, loss of income, loss of property, and mental and emotional pain and suffering for which defendants should be made to answer in damages.

136.  Further, under this Count, defendants intentionally caused claimants great and severe emotional harm, intended to cause said harm, and did so by the

execution of acts and omissions that have no place in a civilized society.

## COUNT IX

## NEGLIGENT AND INTENTIONAL MISREPRESENTATION

137.   Claimants realleage and reiterate all previous and subsequent allegations.

138.   Defendants' actions violated claimants' rights under  Articles 2315 and 2324 of
       the Louisiana Civil Code through negligent and intentional misrepresentation.

139.   The defendant State of Louisiana, through the BOARD, Wayne R. Rogillio,
       other Board members, owed Claimants  duties of care, loyalty and honesty, and
       a duty to comply with the applicable standards of care and the laws of the State
       of Louisiana and the United States, and any and all regulations governing the
       exercise of their duties.

140.   During the course of their dealings with Claimants, the State of Louisiana, the
       Board, Wayne R. Rogillio and other individual members of the Board,
       defendants made numerous knowingly and negligently false affirmative
       representations, and intentional or negligently misleading omissions of fact as
       set forth above.

141.   The State through the Board and Mr. Rogillio, and other members of the Board,
       either knew or reasonably should have known that their representations,
       instructions, and opinions were false.   In addition, the rendering of such
       representations, instructions and opinions, as well as the failure to advise
       Claimants of the omissions as set forth herein, was negligent, grossly negligent,

and reckless.

142.  Claimants fully performed their obligations as directed by the State defendants and the law and regulations governing their operation, and thus did not contribute to the intentional, negligent, grossly negligent, and/or reckless acts in any way.

143.  In reasonable reliance on the State defendants' false affirmative representations and intentional omissions of material facts, Claimants incurred expenses, costs and damages both personally and financially.

144.  But for the State defendants' failure to meet the applicable standard of care and follow the applicable State and Federal laws and regulations governing their activities, and the intentional and/or negligent misrepresentations and material omissions described herein, Claimants would not have suffered damages.

145.  After discovering the State defendants' misrepresentations, Claimants incurred and will continue to incur substantial additional costs in the prosecution of this case, and in the loss of other financial opportunities.

146.  As a proximate cause of the foregoing, Claimants have been injured in an actual amount to be proven at trial, and should be awarded damages in accordance with the evidence, plus attorneys' fees and costs.

147.  Defendants' actions caused Claimants great damage in terms of loss of profits, loss of reputation, loss of income, loss of property, and mental and emotional pain and suffering for which defendants should be made to answer in damages.

148. Further, under this Count, defendants intentionally caused claimants great and severe emotional harm, intended to cause said harm, and did so by the execution of acts and omissions that have no place in a civilized society.

## COUNT X

149. The aforementioned wrongful acts and omissions, and those developed through discovery, constitute a violation of the Louisiana Unfair Trade Practices and Consumer Protection Act.  (La. R.S. 51:1401 *et seq.*)

150. Louisiana Unfair Trade Practices and Consumer Protection Law, LSA R.S. 51:1401 prohibits unfair or deceptive methods, acts or practices in trade or commerce.

151. The defendants have engaged in unfair and deceptive trade practices for the purpose and with the effect of obtaining tremendous business advantage, and for the purpose of putting claimants out of business.

152. The defendants were in the business of providing and regulating security services in the State of Louisiana.   Their activity, as alleged, was unrelated to traditional business practices of the security industry, as contemplated by the Louisiana Unfair Trade Practices and Consumer Protection Law.

153. As a result of Defendants' violation of the Louisiana Unfair Trade Practices and Consumer Protection Law, claimants are entitled, pursuant to LSA R.S. 51:1408, to damages.

WHEREFORE, Claimants Henry Jolly and Able Security and Patrol, LLC, pray that

this petition be filed and served on all defendants, and after due proceedings for judgment

for all legal, compensatory, equitable, punitive, nominal and other damages in amounts that

this Court deems necessary and appropriate.

Respectfully Submitted:

_____s/_____
John-Michael Lawrence (8143)
John-Michael Lawrence, LLC
Energy Center - Suite 2900 - PMB 204
1100 Poydras Street
New Orleans, La. 70163-2900
(504) 585-7797 tel
(225) 744-8748 fax