**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

ABLE SECURITY AND PATROL, LLC.                     CIVIL ACTION
AND HENRY JOLLY

VS.                                                                       NO. 07-1931

STATE OF LOUISIANA, ET AL                         SECTION "B" (4)

<u>ORDER AND REASONS</u>

Before the Court are Rule 12(b)(6) Motions to Dismiss filed by Defendants, Blackwater Security Consulting, LLC and Eric Dean Prince, Rec. Doc. 26, and Corporate Security Solutions, Inc., and Christopher William Frain, Rec. Doc. 27.  Plaintiffs oppose both Motions.  Rec. Doc. 57.  The Motions came hearing without oral argument on January 1, 2008.  The Court, after hearing the arguments of the parties, found Plaintiffs' allegations as to their RICO claims lacking but rather than dismiss, allowed amendment.[1] The Court deferred ruling on the Motion to Dismiss until Plaintiffs filed their Amended Complaint.

Plaintiffs filed their Amended Complaint and these Defendants responded by filing renewed Rule 12(b)(6) Motions to Dismiss.  Rec. Doc. 72, 84.  Plaintiffs oppose those Motions.  Rec. Doc. 81.  The Motions came for hearing without oral argument and were submitted on the briefs.  For the following reasons, the Motion are **DENIED IN PART** and **GRANTED IN PART.**

---

[1]The Court deferred ruling on all the Motions until the Plaintiffs' filed their Amended Complaint and RICO statement.  Rec. Doc. 60.

## I.   BACKGROUND

Henry Jolly ("Jolly") established Able Security and Patrol, LLC ("Able"), a security company, in 2001.  At all pertinent times, Able had approved occupational licenses in Orleans and Jefferson Parishes as well as was licensed with the Louisiana State Board of Private Security Examiners.

After assisting in the first-responder rescue missions post-Katrina, on September 2, 2005, Able and its staff moved operations to Baton Rouge.  On September 5, 2005, Jolly met with the coordinator of the Louisiana State Board of Private Security Examiners ("LSBPSE") to discuss Able's status.  It is alleged that Jolly informed the LSBPSE coordinator that the company was up and running.  It is also alleged that Jolly and Able employees were in the New Orleans area on September 5, 2005, and "knew that recovery was underway and that [their] business would flourish."

On March 1, 2006, Plaintiffs received a cease and desist order executed by Wayne Rogillo, the executive secretary of  the LSBPSE, revoking Able's operating certificate for non-compliance with regulations, specifically failure to maintain insurance.  On May 9, 2006, Jolly faxed proof of insurance to the LSBPSE and on May 15, 2006, Jolly received a letter from the LSBPSE acknowledging it had received the insurance certificate; nevertheless, Plaintiffs were informed that they were obligated to pay a fine for failure to comply with the obligations to maintain insurance coverage.  Also

2

on May 15, 2006, Jolly received a cease and desist order dated May 11, 2006, revoking his classroom instructor license due to lack of insurance.  Jolly called the LSBPSE and advised that there was proper insurance; however, while the LSBPSE stated it would rescind the order, it also indicated that a fine may be imposed.

In addition to, allegedly, issuing improper cease and desist orders, it is alleged that the LSBPSE and Rogillo, allowed unlicensed and uninsured out of state security firms to operate in Louisiana in violation of Louisiana statutes.  One of these alleged firms was named Able Security & Investigations of Louisiana, LLC. Plaintiffs claim that by allowing this "Bogus Able" security company to operate in Louisiana the LSBPSE not only violated Louisiana law , but also were complicit in the improper use of Able's trade name.  Plaintiffs urge that this "Bogus Able" deceived Plaintiffs' clients and competitors into believing that Bogus Able was affiliated with the Plaintiffs.   Plaintiffs allege they complained to the LSBPSE and to Rogillio, to no avail.

Jolly and Able ("Plaintiffs") filed this action against the State of Louisiana, through the LSBPSE, the LSBPSE, Rogillio, and unknown members of the LSBPSE alleging these Defendants: (1) shattered Plaintiffs' operations by denying them their right to operate; (2) allowed out-of-state and unlicensed firms to operate; (3) allowed one of the out-of-state firms to violate Plaintiffs' state trade and business law rights; (4) favored "Bogus Able" and

3

other out of state and unlicensed firms based on race and ties to LSBPSE board members; and (5) denied Plaintiffs the right to operate based on race.  Plaintiffs claim all these actions were intentional and outrageous and have damaged Plaintiffs' reputation among its clients and others, deprived Plaintiffs of jobs and fees, injured Plaintiffs in their future business, caused Plaintiffs to incur expenses, fees, costs and suffer emotional harm.

In addition to the LSBPSE and Rogillio, Plaintiffs sued Able Security & Investigations, LLC ("Bogus Able"), its owner Walter D. Roberts ("Roberts"), and their insurer El Dorado Insurance Agency, Inc., alleging that these Defendants intentionally operated in the State of Louisiana as "Able Security" in violation of trade name and fair business statutes.  Further, Plaintiffs allege that "Bogus Able" and Roberts purposefully profited off of the trade name of Plaintiffs, intentionally posed as Plaintiff, Able Security and Patrol, operated without a proper license, operated without proper insurance, and also operated in a way to cause damage to Plaintiffs reputation and ability to do business.

Plaintiffs also name Corporate Security Solutions, Inc. ("Corporate"), its owner Christopher Frain ("Frain"), their insurer Marsh Use, Inc., Insurance Company, Blackwater Security Consultants, LLC ("Blackwater"), its owner Erik Dean Prince ("Prince"), and their insurer Commercial Insurance Group, Inc.. The allegations against these Defendants are that Corporate and

Blackwater operated in Louisiana without a proper license, insurance and other necessary qualifications for business, solicited Plaintiffs clients and intentionally misrepresented Plaintiffs' status to get business. Plaintiffs allege these acts caused them financial injury and injury to their reputation.

At the conclusion of the oral argument on the first round of Motions to Dismiss, the Court allowed amendment of the Complaint. Rec. Doc. 60. Plaintiffs filed an Amended Complaint and allege that Defendants, collectively: violated section 1962(a),(b),(c) and/or (d) of the Racketeer Influenced and Corrupt Organization Act ("RICO"); violated Plaintiffs' 5th and 14th Amendment rights to due process and equal protection, violated 42 U.S.C. §§§ 1981, 1983 and 1985; violated federal and state racketeering acts; violated Louisiana trade and business practice statutes; and intentionally and negligently inflicted tortious actions upon Plaintiffs in violation of Louisiana law.

The security company Defendants responded by filing the instant renewed FRCP 12(b)(6) Motions to Dismiss. Rec. Doc. 72, 84.

## II.   LAW AND ANALYSIS

### A.   Rule 12(b)(6) Standard.

Dismissal pursuant to FRCP 12(b)(6) "is viewed with disfavor and is rarely granted." *Lowery v. Texas A&M University System*, 117 F.3d 242, 247 (5th Cir. 1997); *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982). The

5

complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the original complaint must be taken as true. *Oliver v. Scott,* 276 F.3d 736, 740 (5th Cir.2002); *Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1980). When evaluating a Rule 12(b)(6) motion to dismiss, the Court must accept as true all well-pleaded allegations and resolve all doubts in favor of the plaintiff. *Tanglewood East Homeowners v. Charles-Thomas, Inc.*, 849 F.2d 1568, 1572 (5th Cir. 1988). The Court cannot dismiss a complaint under Rule 12(b)(6) unless it appears beyond doubt that the plaintiff cannot prove a plausible set of facts in support of his claim which would entitle him to relief. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007).

**B. RICO Claims.**

Plaintiffs have alleged violations of Section 1962 (a), (b) (c) and/or (d). These RICO subsections state, in their simplest terms, that:

> (a) a person who has received income from a pattern of racketeering activity cannot invest that income in an enterprise;
>
> (b) a person cannot acquire or maintain an interest in an enterprise through a pattern of racketeering;
>
> (c) a person who is employed by or associated with an enterprise cannot conduct the affairs of the enterprise through a pattern of racketeering activity; and
>
> (d) a person cannot conspire to violate

subsections (a), (b), or (c).

*Abraham v. Singh,* 480 F.3d 351, 354 -355 (5th Cir. 2007). Regardless of the subsection, RICO claims under § 1962 have three common elements: "(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise." *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer,* 90 F.3d 118, 122 (5th Cir.1996)(*quoting In re Burzynski*, 989 F.2d 733, 741-42 (5th Cir.1993)); *Accord Price v. Pinnacle Brands, Inc*. 138 F.3d 602, 606 (5th Cir.1998).

Defendants urge that Plaintiffs' RICO claim fails because, *inter alia*, they do not adequately allege a RICO "enterprise." The term "enterprise" is defined as including "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). An enterprise is a group of persons or entities associating together for the common purpose of engaging in a course of conduct. *United States v. Turkette*, 452 U.S. 576, 583, 101 S.Ct. 2524, 2528, 69 L.Ed.2d 246 (1981). There is no restriction upon the associations embraced by the definition: an enterprise includes any union or group of individuals associated in fact. *Turkette* 452 U.S. at 580. The plaintiff alleging an association in fact enterprise must adduce evidence demonstrating "'an ongoing organization, formal or informal, and ... evidence

7

that the various associates function as a continuing unit.'" *Turkette*, 452 U.S. at 583.   As such, an association in fact enterprise: (1) must have an existence separate and apart from the pattern of racketeering, (2) must be an ongoing organization and (3) its members must function as a continuing unit as shown by a hierarchical or consensual decision making structure." *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 243 (5th Cir. 1988). The enterprise is not a pattern of racketeering activity, but must exist separate and apart from the pattern of racketeering activity in which it engages.   *Atkinson v. Anadarko Bank & Trust Co.*, 808 F. 2d 438. 439-40 (5th Cir 1987).

Since an association in fact enterprise must have an existence separate and apart from the pattern of racketeering, *Delta Truck*, 855 F.2d at 243, proof of a pattern of racketeering activity does not necessarily establish a RICO enterprise. *Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423, 426-27 (5th Cir.1987); *See also Turkette*, 101 S.Ct. at 2528.   "An enterprise must be more than a summation of predicate acts." *Ocean Energy II v. Alexander & Alexander, Inc.*, 868 F.2d 740, 748 (5th Cir.1989).

For purposes of § 1962(c), which prohibits the conduct of an enterprise's affairs through a pattern of racketeering activity, the plaintiff must demonstrate not only that the enterprise is distinct from the series of predicate acts constituting racketeering activity, but also that the RICO "person" who commits

8

the predicate acts is distinct from the enterprise. *Bishop v. Corbitt Marine Ways, Inc.*, 802 F.2d 122, 123 (5th Cir.1986). It is not enough to establish that a defendant corporation through its agents committed the predicate acts in the conduct of its own business. *Elliott v. Foufas*, 867 F.2d 877, 881 (5th Cir.1989). That officers or employees of a corporation, in the course of their employment, associate to commit predicate acts does not establish an association in fact enterprise distinct from the corporation. *Id.; See also Atkinson*, 808 F.2d at 441.

The Amended Complaint and Amended RICO statement provide the following allegations related to "enterprise":

> The Board (LSBPSE) is a legitimate state entity, with a right to sue and be sued. It's member and chair, defendant Rogillo,(sic) and other unknown members, operate through the legitimate Board, via their positions, to illegally force Petitioners out of business and replace Petitioners with the defendant security companies. The Petitioners [Plaintiffs] are ordered to cease and desist by Rogillo (sic) and the Board members while the security companies are allowed to operate illegally and take Petitioners' business while being in non-compliance status.
>
> The security companies are, upon information and belief, legitimate foreign security companies who, through the owners and operators of these companies, illegally operate in Louisiana, in an agreement with the Board who allows them to operate illegally, by taking the business of Petitioners and similarly situated security companies. Discovery may show, however, that one of more of the security companies were formed for the specific purpose of perpetuating the scheme as a member of the Association in Fact of

9

Rogillo, (sic) unknown Board members, owner and operators of the security companies, and the security companies.

Rogillo (sic) and unknown members of the Board operate in concert with the owners and operators of the security companies to illegally push Petitioners out of their legitimately established businesses and to replace Petitioners with the illegally operating security companies. In this manner, Rogillo (sic) and unknown members of the Board and the owners and operators of the security companies operate as an Association in Fact to conspire to commit racketeering through their positions with the Board and the security companies.

Upon information and belief, the defendant security companies are otherwise legitimate operations outside of Louisiana with a legitimate existence outside of the RICO scheme.

Alternatively, discovery may show that one or more of the defendant security companies were created to commit the RICO violations and to participate in the scheme against petitioners. If that proves to be the case, then the security companies are not legitimate enterprises and exist for the sole purpose of the scheme to monopolize petitioner's business.

The Defendants are alleged to have used the mail and telephone to partake in the alleged scheme.  In describing how the proposed mail and wire fraud relate to the enterprise, Plaintiffs provide:

The fraudulent documents sent by U. S. Mail (solicitation of customers claiming to be legally operating in this state, documents sent to the Board to help continue the illegal operation in the state, allegations of non-compliance from the Board to Petitioners, correspondence re denial of appeals of cease and desist orders sent by the Board to

Petitioners, billing records mailed to customers when the security companies were in noncompliance of state law and the Board's regulations, any and all reports, records, claims of compliance mailed from the security companies to the Board or any other state agency) all of which supported and continue to support the common plan of the members of the Board and owner/operators of the security companies to freeze out the legitimate security businesses in Louisiana, such as Petitioners, and replace them with the out of state defendants would show favor to Rogillo (sic) and the Board in the form of money, business advantage, or other interests.

Further, when asked to describe in detail the alleged "enterprise" of each RICO claim, Plaintiffs provide:

1. The Board is a legitimate state entity run by the individual defendants Rogillo (sic) and other Board members, and used by Rogillo (sic) and unknown others to eliminate private security company competition in favor of the illegally operating defendant security companies. 2. The individual security companies are, upon information and belief, legitimate out of state companies who are used by the individual defendants to operate illegally in Louisiana in concert with the Board, and to take the business of Petitioners post-Katrina. 3. The members of the Board and owner/operators of the security companies form an Association in Fact for the mission of carrying out the scheme.

After Hurricane Katrina, [LPBSE] issued fraudulent notices to [Plaintiffs] alleging that Petitioners were in non-compliance with Louisiana law and certain regulations regarding licensing, insurance, and other regulatory matters, all of which were false. Plaintiffs received the [LBPSE's] false and fraudulent correspondence and cease and desist orders through the U. S. Mail, and immediately informed the [LBSPE] that they were, in fact, in full compliance with all state law and

11

Board regulations through the U. S. Mail and by telephone. In spite of this knowledge of compliance both before and after the issuance of the cease and desist orders, the [LSBPSE] and [Rogillio] kept [Plaintiffs] from operating via the bogus cease and desist orders and allegations, false and fraudulent allegations and fraudulent charges of noncompliance, and the Board's continued campaign to keep Petitioners from operating while the following defendant security companies knowingly operated without being in compliance with the Board, and with the Board's blessing as part of the RICO conspiracy.

Plaintiffs further provide:

"[t]he ...owner/operators of the security companies and Rogillo (sic)of the Board are individuals that exist separate and apart from the enterprises of the Board and the Security companies. However, these individuals also form an Association in Fact that exist for the sake of the scheme. The individually named defendants are the Association in Fact. The security companies, upon information and belief, have legitimate existence outside of the state, but that can be shown to be false through discovery. The Board has an existence separate and apart from Rogillo (sic). The Association in Fact exist to perpetuate the scheme. The BOARD is an otherwise legitimate entity run in this context illegally. It is unknown at this time whether the [defendant security companies] have a legitimate existence outside of the ASSOCIATION IN FACT, if they do, those companies have an existence outside of the illegal scheme and outside of Louisiana.
...

The BOARD has the responsibility of regulating the private security patrol business in Louisiana, and has the authority to order a business to cease and desist operation if the business is non in compliance with the Board or state law. The Board issued fraudulent

12

allegations and fraudulent cease and desist orders to Petitioners. The purpose was to keep Petitioners from operation so that the coconspirators (owner/operators of the defendant security companies, or the security companies themselves) could then take Petitioners' business and the business of similarly situated local firms, while the defendant security companies and the individual defendant owner/operators were themselves in non-compliance – the same noncompliance that the Board fraudulently alleged against Petitioners. The Board was used by ROGILLO (sic) AND DEFENDANT SECURITY COMPANIES to block the legal operation of ABLE SECURITY AND JOLLY and other legitimate companies through the false charges of non-compliance, fraudulent Cease and Desist Orders, and the operation by defendant security companies while in a status of non-compliance.

With regard to the separation between the person and the enterprise, Plaintiffs provide "Rogillo (sic) and the unknown Board members are liable parties separate from the Board. The Board, as an entity, upon information and belief, has a legitimate existence outside of the activities of defendants Rogillo (sic) and unknown Board members. The owner/operators, provided the security firms have a legitimate existence outside of Louisiana, are the liable parties who are using legitimate enterprises for their illegal operation. However, should discovery show no legitimate existence of the security companies outside of Louisiana, then the companies themselves are also liable parties." Plaintiffs then go on to allege: "[w]hile the defendants participated in the enterprise and were a part of it, the Defendants also have an existence separate

13

and distinct from the Enterprise.   Defendants maintained an
interest in and control of the Enterprise and also conducted or
participated in the conduct of the Enterprise's affairs through a
pattern of racketeering activity."

Plaintiffs have not demonstrated an "enterprise" needed to
sustain their RICO claim under any of the four sections.   Despite
being given ample opportunity at amendment, the aforementioned
sections of Plaintiffs' Amended Complaint offer only allegations of
predicate acts to demonstrate an association between the Board,
Rogillio, and the security company defendants, namely that these
entities all used the mail and wire systems fraudulently to put
Plaintiffs out of business.   Plaintiffs fail to demonstrate, in the
over thirty-two pages of RICO allegations, the existence of an
association separate from the predicate acts.   Additionally,
Plaintiffs fail to plead with specificity how each of these
defendants performed acts in furtherance of the enterprise.   All of
the Defendants are alleged to have acted, through the mails and the
telephones, to ultimately put Plaintiffs out of business.   However,
there is no evidence presented that the various Defendants
functioned as a continuing unit to actually accomplish the goal of
putting Plaintiffs out of business.   Further, all of Plaintiffs
allegations are speculative and conclusory.

Even if the Court were to accept Plaintiffs' conclusory
allegations and find that an association beyond the commission of

14

predicate acts, Plaintiffs are unable to demonstrate the association's continuity. A RICO association in fact enterprise must be shown to have continuity. *Landry v. Air Line Pilots Ass'n Intern. AFL-CIO,* 901 F.2d 404, 433 (5th Cir.1990), cert. denied, 498 U.S. 895, 111 S.Ct. 244, 112 L.Ed.2d 203 (1990). An enterprise that "briefly flourished and faded" will not suffice; Plaintiffs must adduce evidence showing that the enterprise functioned as a continuing unit. *Landry*, 901 F.2d at 433.

The Amended Complaint alleges that the enterprise was established and existed to put Plaintiffs out of business. As to transactions by the Defendants, Plaintiffs allege the Board and Rogillio issued an improper cease and desist order and the other security defendants improperly operated in the state; however, these one time acts do not demonstrate an ongoing relationship among the parties to the alleged association in fact enterprise sufficient to meet the continuity requirement.

For these reasons, the security company Defendants respective Motions are **granted** as to the RICO claims.

**C.    Remaining Claims.**

At oral argument, the Court agreed with the Plaintiffs' counsel that his clients stated sufficient facts to state non-RICO claims; however, the Court deferred ruling on all of the issues raised in the original Motions until after Amendment. Accordingly, the issue of the remaining claims are before the Court.

i.    **Civil Rights Violations**.

A.  **Section 1983**.

To state a cause of action under section 1983 a plaintiff must allege that the person who deprived him of a federal right was acting under color of law. *Cinel v. Connick*, 15 F.3d 1338, 1342 (5th Cir.1994).   For a private citizen to be held liable under section 1983, the plaintiff must allege that the citizen conspired with or acted in concert with state actors. *Mylett v. Jeane*, 879 F.2d 1272, 1275 (5th Cir.1989).   A non-state actor may be liable under 1983 if he was a "willful participant in joint activity with the State or its agents." *Cinel,* 15 F.3d at 1343. The plaintiff must allege: (1) an agreement between the private and public defendants to commit an illegal act and (2) a deprivation of constitutional rights. *Id.*   The focus of the inquiry into whether a private actor can be subjected to constitutional liability is whether "such a close nexus between the State and the challenged action" exists "that seemingly private behavior may be fairly treated as that of the State itself." *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Assoc*., 531 U.S. 288, 295, 121 S.Ct. 924, 148 L.Ed.2d 807 (2001) (internal quotation omitted).   The determination whether private conduct bears sufficiently close nexus to the state is highly circumstantial and far from precise. *Brentwood Acad*., 531 U.S. at 295-96, 121 S.Ct. 924 (stating that "[w]hat is fairly attributable is a matter of normative judgment,

16

and the criteria lack rigid simplicity" and that "[f]rom the range of circumstances that could point toward the State behind an individual face, no one fact can function as a necessary condition across the board for finding state action") (citations omitted). Whether the conduct of private parties is state action depends upon the specific facts and circumstances surrounding the challenged action. *Albright v. Longview Police Dept*. 884 F.2d 835, 838 (5th Cir. 1989)(citations omitted).   Allegations that are merely conclusory, without reference to specific facts, will not suffice. *Brinkmann v. Johnston*, 793 F.2d 111, 113 (5th Cir.1986); *Priester v. Lowndes County* , 354 F.3d 414, 420 (5th Cir. 2004).

Defendants argue that the Original and Amended Complaints provide only conclusory allegations and do not state a single specific factual allegation that they or anyone with the private security companies conspired with a state actor to commit an illegal act.   Further, Defendants ague that Plaintiffs fail to establish causation; that is, there are no facts which support a casual connection between Blackwater and the unsupported deprivation of Plaintiffs' rights.

Count II of Plaintiffs' Original and Amended Complaint allege as follows: "the defendants conspired, confederated and agreed among themselves to deprive claimants of their rights to equal protection and due process under federal law... and to deprive them of their rights under state law and regulation." Under Count IV,

17

Plaintiffs allege that the section 1983 violations are based upon Defendants depriving them of equal protection and due process based on race.   Plaintiffs further allege that the Section 1983 claims are because of violations of equal protection and due process based on race through the exercise of state authority and action. Plaintiffs further allege that "Defendants' actions, separately and in concert, damaged claimants' reputation among its client and others, deprived claimants of jobs and fees for services rightfully theirs, injured claimants in their future business, caused claimants to incur expenses, fees, costs and suffer emotional harm."   Finally, Plaintiffs allege that "the private defendants conspired with and operated in concert with the state actor, the Board, to deprive Petitioners of their rights."

These allegations accepted as true for purposes of this Motion, are sufficient to state a claim against the private actors for violations of Plaintiffs' civil rights.   Thus, the Motions to Dismiss are **denied** as to Plaintiffs' claims for relief under 42 U.S.C. § 1983.

### b.   Section 1985.

Plaintiffs can recover under 42 U.S.C. § 1985 if they are injured as a result of a conspiracy to interfere with civil rights. The heart of the cause of action accorded by § 1985 is a conspiracy to interfere with a person's civil rights.   *Holdiness v. Stroud*, 808 F. 2d 417, 424-425 (5th Cir. 1987).   Subsection 1 of Section

1985 relates to a conspiracy to prevent a public official from performing his duty; Subsection 2 relates to a conspiracy to obstruct justice or intimidate a party, a witness, or a juror and Subsection 3, applicable here, concerns the acts of two or more persons in conspiring to, or in going in disguise to, deprive any person of certain rights.  Subsections 2 and 3 relate only to actions motivated by some racial or some other type of violations. *Holdiness*, 808 F. 2d at 424.

In order to state a cause of action § 1985(3), Plaintiffs must allege: (1) the defendants conspired; (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) one or more of the conspirators committed some act in furtherance of the conspiracy; whereby (4) another is injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States; and (5) the action of the conspirators is motivated by a racial animus. *Wong v. Stripling*, 881 F.2d 200, 202 –203 (5th Cir. 1989).  Plaintiffs must plead the operative facts upon which their claim is based. Mere conclusory allegations are insufficient.  Equal specificity is required when a charge of conspiracy is made. *Holdiness*, 808 F.2d at 424 (citations omitted).

Defendants argue that Plaintiffs have failed to plead specific

facts upon which the charge of conspiracy is based, have failed to allege facts sufficient to support their conspiracy theory, have failed to allege specific facts which demonstrate an agreement between the private security companies and any other defendant resulting in the deprivation of Plaintiffs' rights, have failed to adequately allege an equal protection violation, failed to show that the private security companies acted in furtherance of any alleged conspiracy, and failed to show racial animus.  Corporate Security and Frain additionally argue that these claims should be dismissed because a state agency and its employees acting in their official capacities are not persons within the meaning of section 1985.  As such, there is no conspiracy by "persons" covered by that statute.

On the Section 1985 claim, Plaintiffs' Original and Amended Complaint allege that "Defendants' action violated claimants rights under Title 42 USC sec. 1985 by conspiring to deprive them of equal protection and due process... based on race."  Plaintiffs further allege that the "private defendants conspired with and operated in concert with the state actor, the Board, to deprive Petitioners' of their rights."

Plaintiffs have sufficiently stated a claim for a conspiracy by all Defendants to deprive them of their constitutional rights based upon race.  On the issue of "person," Corporate Security and Frain do not have standing to challenge the State as a "person"

under Section 1985 and that claim is rejected.   Accordingly, the Motions to Dismiss are **denied** as to the Section 1985 claim.

### c.   Section 1981.

Turning to the Section 1981 claim, Plaintiffs must allege : (1) that plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerns one or more of the activities enumerated in the statute. *Green v. State Bar of Texas*, 27 F. 3d 1083, 1086 (5th Cir. 1994).  The activities enumerated in the statute are: "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."   *See* 42 U.S.C. § 1981.

Defendants concede that Able is a minority business and that Jolly is a minority male; however, they urge that Plaintiffs have not pled any other of the requisite elements for a cause of action under Section 1981.

Plaintiffs did not raise a Section 1981 claim in their Original Complaint.  The Amended Complaint states as follows with regard to this claim: "Defendants actions violated claimants rights under Title 42 USC sec. 1981, 1983, 1985 by depriving Petitioners and conspiring to deprive them of equal protection and due

21

process... based on race." The Court agrees with Defendants that this allegation is insufficient to plead a Section 1981 claim because Plaintiffs do not plead or lay the facts showing any discrimination occurred in one or more of the activities enumerated in the statute. Accordingly, the Motions are **granted** as to the Section 1981 claim.

### ii. 5th and 14th Amendment Rights.

In Count III of the Amended Complaint, Plaintiffs allege that the "Defendants' actions violated claimants' rights under the 5th and 14th Amendments to the United States Constitution by depriving them of equal protection and due process... based on race." Plaintiffs further allege "[t]he private defendants conspired with and operated in concert with the state actor, the Board, to deprive Petitioners' of their rights."

Defendants' Motions are **granted** with regard to the 5th Amendment claims. Neither security company Defendant is an actor of the federal government. Additionally, there are not any allegations that the federal government was implicated in the alleged conduct directed at Plaintiffs. The 5th Amendment applies only when a constitutional deprivation is caused by a federal actor. *See Ling v. City of Garland,* 2006 WL 1816434, *2 (N.D. Tex. 2006); *Whittington v. City of Cuero,* 2007 WL 951864, *10 (S.D. Tex. 2007).

Turning to the 14th Amendment claims, Plaintiffs must allege

22

significant state involvement in order to bring an otherwise private concern within the ambit of the Fourteenth Amendment. *Fulton v. Hecht,* 545 F.2d 540, 541 (5th Cir. 1977). The protective armor of the Fourteenth Amendment invoked under Section 1983 is activated to prevent deprivation of rights secured by the Constitution and laws only when state action or action taken under color of state law is present. *Fulton,* 545 F.2d at 542.

Defendants argue that the 14th Amendment claims should be dismissed because they are not state actors but private entities and therefore, immune from the 14th Amendment's restrictions. Further, they allege that Plaintiffs' allegations are conclusory and fail to allege a relationship or connection between the action of the private security company Defendants and the actions of the Board. Because Plaintiffs have failed to allege state action and sufficient state involvement with any actions of these Defendants, they argue the claims should be dismissed.

For the same reasons discussed in the section of this opinion relating to Plaintiffs' Section 1983 claims, the Court finds that Defendants' Motions on this issue are **denied** as Plaintiffs have sufficiently alleged state action.

### iii.        Louisiana Constitution.

Plaintiffs' Original and Amended Complaint allege only the following with regard to the Louisiana Constitution: "[t]his Court has jurisdiction over the following Non-RICO Claims: ... (e)Under

23

the Louisiana Constitution and Louisiana General Tort Law for violations of Equal Protection and Denial of Due Process..." and "(h) and the Louisiana Constitution."  Unlike the remaining causes of action, Plaintiffs do not provide a separate count for the allegations relating to the Louisiana Constitution and there are not any specific allegations against these Defendants relating to how they violated the Louisiana Constitution.  Accordingly, the motions are **granted** as to the Louisiana Constitution claims.

### iv.  **Louisiana Racketeering Act**.

For the same reasons discussed in the section relating to dismissal of the claims under the federal RICO statute, the Motions are **granted** as to the claims for Louisiana RICO violations.

### v.  **Louisiana Unfair Trade Practices Act.**

The Louisiana Unfair Trade Practices Act ("LUTPA") makes illegal all unfair or deceptive acts or practices in the conduct of any trade or commerce. LSA-R.S. § 51:1405. What constitutes deceptive practices prohibited by the statute is determined on a case-by-case basis. *Jefferson v. Chevron U.S.A. Inc*., 713 So.2d 785, 792 (1998).  Louisiana courts have defined unfair practices as those which offend "established" public policy and are "immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Monroe Medical Clinic, Inc. v. Hospital Corp. of America*, 522 So.2d 1362, 1365 (La. App. 2nd Cir.  1988).  A trade practice is deceptive "when it amounts to fraud, deceit, or

misrepresentation." *Jefferson,* 713 So. 2d at 793.   The Act does not prohibit sound business judgment or appropriately competitive free enterprise transactions.   *American Machinery Movers, Inc. v. Machinery Movers of New Orleans, LLC* 136 F.Supp.2d 599, 604 (E.D. La. 2001)(citations omitted).   *See also Turner v. Purina Mills, Inc.*, 989 F.2d 1419, 1422 (5th Cir.1993) (The LUTPA does not provide an alternative remedy for simple breaches of contract.).

Conversely, where there exists evidence of fraud or specific intent to injure a competitor, the courts have been more willing to embrace the LUTPA.   *Chemical Distrib., Inc. v. Exxon Corp.,* 1 F.3d 1478, 1485-86 (5th Cir.1993), (noting evidence of deception and specific jury finding of bad faith); *Head v. Waggoner*, 552 So.2d 599, 604 (La. App. 2nd Cir. 1989) (Although the trial court did not make a specific finding of fraud, court of appeals noted that the plaintiffs presented "ample evidence of fraud" by the defendant).

Defendants argue that Plaintiffs have failed to allege with any specificity facts supporting a claim that they engaged in fraud, deceit, misrepresentations or other unethical conduct. Further, Defendants urge that Plaintiffs have failed to allege any facts establishing that they had the specific intent of harming competition, including Plaintiffs.  Moreover, Defendants urge that Plaintiffs' blanket, conclusory allegations that they solicited Plaintiffs' clients and made misrepresentations to them regarding Plaintiffs' ability to do business are unsupported.   Finally,

Defendants urge that their sound business decisions are not punishable under LUPTA.

Plaintiffs allege that Defendants' actions constitute a violation of LUPTA because the Defendants' practices were employed to give them a business advantage and put Plaintiffs out of business. With regard to the practices, Plaintiffs allege the private security company Defendants operated in Louisiana without a license and other necessary qualifications, and that they solicited Plaintiffs' clients by misrepresenting Plaintiffs' status. It is alleged that these actions were taken to financially cripple Plaintiffs and to injure their reputation. In Count VII of the Original and Amended Complaints, Plaintiffs assert that Defendants "violated claimants rights under [LUPTA} by conspiring to and by depriving them of equal protection and due process...based on race, and through the predicate acts and omissions as alleged herein."

Plaintiffs have alleged sufficiently egregious action by the security company Defendants to state a claim under LUPTA. The Plaintiffs' allegations, accepted as true for purposes of this Motion, do state a claim for unfair and unethical practices by these Defendants. While it may ultimately be proven that the Defendants' actions were based upon sound business judgment, on this Motion to Dismiss, the Court looks only to the Complaint in making its decision. Based on the allegations in the Original and

Amended Complaint, Plaintiffs have sufficiently stated a claim for violations of LUPTA and the Motions are **denied** as to these claims.

### vi.  Louisiana Tort Claims.

Plaintiffs acknowledge in their opposition that the Intentional Infliction of Emotional Distress claim is not being raised as to the moving security companies and their owners. Accordingly, those claims are **Dismissed**.

In Count VII of the Original and Amended Complaint, Plaintiffs allege that the Defendants actions' violated LSA-CC Art. 2315 and 2324 "by conspiring to and by depriving them of equal protection and due process, as alleged, based on race and through violations of the acts and omissions as alleged herein."  Count IX of the Original and Amended Complaint alleges that Defendants' actions violated Plaintiffs' rights under LSA-CC Art. 2315 and 2324 through "negligent and intentional misrepresentation."  In this Count, Plaintiffs claim that the Board and Rogillio owed claimants duties of "care, loyalty, and honesty" and a "duty to comply with applicable standards of care and the laws of the State of Louisiana and the United States, and any and all regulations governing the exercise of their duties."  Plaintiffs further allege that during the course their dealings with the Board, Rogillio and individual board members, they made numerous false representations knowingly and negligently and intentional or negligently made misleading omissions of fact.  Plaintiffs further allege that the Board and

Rogillio either knew or should have known that such representations, instructions and opinions were false and that rendering such was negligent and reckless. Plaintiffs also allege that they reasonably relied upon the false affirmative actions of the "State Defendants" and in so doing, incurred damages. Finally, Plaintiffs allege that "[b]ut for the State defendants' failure to meet the applicable standard of care and follow the applicable State and Federal laws and regulations governing their activities, and the intentional and/or negligent misrepresentations and material omissions described herein, [plaintiffs] would not have suffered damages."

Defendants, Corporate Security and Frain argue that in order to prevail, Plaintiffs must show that they owed a duty to Plaintiffs. Because Plaintiffs cannot show that these Defendants owed a duty, they argue the general tort law claims should be dismissed. Additionally, they urge that the allegations show that the actions of the Board caused the damages and such cause was separate and independent of any action taken by Corporate Security and Frain.

Blackwater and Prince urge that Plaintiffs' claims fail because they are "sweeping, unspecified, and conclusory." Further, they urge that Plaintiffs cannot state a valid claim for conspiracy under LSA-C.C. Art. 2324 because Plaintiffs have failed to establish the meeting of the minds or collusion between the

Defendants for the purpose of committing a wrongdoing.   Finally, Blackwater and Prince argue that the allegations regarding negligent intentional misrepresentation do not allege any facts regarding them and therefore, this claim should be dismissed.

In Opposition, Plaintiffs recite the allegations in their Complaint and urge that the "individual defendants and the Board are alleged to have operated and to continue to operate in concert for the purpose of absorbing Petitioner's business and customers and injuring petitioners in their business in easily determined amounts."

In order to sustain a cause of action under LSA-C.C. Art. 2315, the petition must adequately allege fault, causation, and damage. *Pence v. Ketchum*, 326 So.2d 831, 835 (La.1976), overruled in part, 373 So.2d 494 (La.1979); *Eschete v. City of New Orleans*, 258 La. 133, 245 So.2d 383 (1971). Fault is a broad concept and, of course, includes negligence. LSA-C.C. Art. 2316. Negligence is conduct which falls below the standard established by law for the protection of others against unreasonable risk of harm. It is a departure from the conduct expectable of a reasonably prudent man under like circumstances.   *Brown v. Liberty Mutual Insurance Company*, 234 La. 860, 101 So.2d 696 (1958).   For analysis, negligence is often divided into duty and breach of duty. *Pence,* 326 So 2d at 835.

Despite being given ample opportunity to amend, Plaintiffs

fail to allege a duty that each of the security company Defendants owed to Plaintiffs.  Nowhere in the Original or Amended Complaint are allegations that these Defendants owed Plaintiffs a duty, that the duty was breached and that resulting damages occurred. The only allegations of any duty relate to actions of the LBPSE, Rogillio and other board members in Count IX of the Complaint.  The allegations of intentional and negligent misrepresentation do not mention the moving Defendants.  Accordingly, in the absence of any duty, Plaintiffs are unable to sustain a cause of action in negligence against these Defendants and it is ordered that Motions to Dismiss the Louisiana general tort law claims are **granted.**

Turning to the allegation that Defendants violated LSA-CC art. 2324, that Article provides, in pertinent part:

> A. He who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act.
>
> B. If liability is not solidary pursuant to Paragraph A, then liability for damages caused by two or more persons shall be a joint and divisible obligation. A joint tortfeasor shall not be liable for more than his degree of fault and shall not be solidarily liable with any other person for damages attributable to the fault of such other person, including the person suffering injury, death, or loss, regardless of such other person's insolvency, ability to pay, degree of fault, immunity by statute or otherwise, including but not limited to immunity as provided in R.S. 23: 1032, or that the other person's identity is not known or reasonably ascertainable.

Under this article, an independent cause of action for civil

30

conspiracy does not exist; rather, the actionable element of article 2324 is the intentional tort the conspirators agreed to commit and committed in whole or in part causing plaintiff's injury. *See Ross v. Conoco, Inc.*, 2002-0299, pp. 7-8 (La.10/15/02), 828 So.2d 546, 552 *citing Butz v. Lynch*, 97-2166, p. 6 (La.App. 1 Cir. 4/8/98), 710 So.2d 1171, 1174); *Ryhce v. Martin*, 173 F.Supp. 2d. 521, 535 (E.D. La. 2001); *Jefferson v. Lead Industries Association, Inc, et al.*, 930 F. Supp 241 (E.D. La. 1996). Simply stated, the unlawful act is the tortious conduct. *Chrysler Credit*, 51 F.3d at 557.

In this case, the only allegations of intentional tortious conduct pursuant to Louisiana law is directed at the Board, Rogillio and other Board members. Plaintiffs also acknowledge that the Intentional Infliction of Emotional Distress claim is brought solely against the Board. Further, this Court has dismissed any negligence claims against moving Defendants for failure to allege duty and breach. Finally, the negligent and intentional misrepresentation claims in the Original and Amended Complaints do not allege any conduct other than that done by the LSBPSE Board, Rogillio and other board members. There are not any allegations that the moving Defendants conspired with or agreed with the LSBPSE Board, Rogillio and other board members to intentionally and/or negligently make misrepresentations to the Plaintiffs. As pointed out *supra*, those allegations are made against the LSBPSE Board,

31

Rogillio and other board members only.  Accordingly, the Motions to Dismiss the general Louisiana tort claims and the negligent and intentional misrepresentation claims against Corporate Security, Frain, Blackwater and Prince are **granted**.

**III.  CONCLUSION.**

For the foregoing reasons, Defendants' Motions to Dismiss are **GRANTED IN PART and DENIED IN PART.**

Accordingly,

**IT IS ORDERED** that the Motions to Dismiss, Rec. Docs. 26, 27, 72, 84, are **GRANTED IN PART** and **DENIED IN PART**.  The Motion is granted as to the following claims against Blackwater Security Consulting, LLC, Eric Dean Prince, Corporate Security Solutions, Inc., and Christopher William Frain, are hereby **DISMISSED WITH PREJUDICE**: all RICO claims; 42 USC § 1981; 5th Amendment claims; Louisiana Constitution; Louisiana Racketeering Act; and Louisiana Tort law claims.  The Motion is denied with regard to the remaining claims.

New Orleans, Louisiana, this 23rd  day of July, 2008.

**IVAN L.R. LEMELLE**
**UNITED STATES DISTRICT JUDGE**

32